UNITED STATES of America,
Plaintiff-Appellee,

v.

Leonard MORRIS, Jr.,
Defendant-Appellant.

No. 85–1241.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1987.

Decided Sept. 15, 1987.

Sanford Svetcov, San Francisco, Cal., for plaintiff-appellee.

J. Frank McCabe, San Francisco, Cal., for defendant-appellant.

Before CHAMBERS, WALLACE and KENNEDY, Circuit Judges.

WALLACE, Circuit Judge:

Morris was charged in a four-count indictment with: (1) possession of a credit card embossing machine, 18 U.S.C. § 1029(a)(4); (2) possession of more than fifteen counterfeit credit cards, 18 U.S.C. § 1029(a)(3); (3) trafficking in a counterfeit credit card, 18 U.S.C. § 1029(a)(1); and (4) aiding and abetting Sims in the use of a counterfeit credit card, 18 U.S.C. § 1029(b)(1) and 18 U.S.C. § 2. A jury trial resulted in a conviction on each of the four counts. The district judge sentenced Morris to 15 years each on counts 1, 3, and 4 and to 10 years on count 2, with the sentences for counts 3 and 4 to be served concurrently but to run consecutively to the count 1 sentence. The sentence for count 2 was stayed and Morris placed on probation for 5 years, to be served after his prison sentence. The court also imposed $5,000 fines for counts 1 and 3. Morris timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

Morris first challenges the district court's decision to admit testimony from two of his former associates that he had

given them altered credit cards one year previously. We review the admission of prior similar acts for abuse of discretion. *United States v. Alfonso*, 759 F.2d 728, 739 (9th Cir.1985) (*Alfonso*).

Morris argues that the testimony failed to meet the three prerequisites for the admissibility of evidence of prior criminal conduct: that the proof be clear and convincing; that the prior conduct not be too remote in time; and that the conduct be similar to the offense charged. *See United States v. Bailleaux*, 685 F.2d 1105, 1109–10 (9th Cir.1982) (*Bailleaux*). We disagree. The testimony of the two witnesses was simple and clear, mutually corroborative, and withstood cross-examination. It was not too remote in time. *See Alfonso*, 759 F.2d at 739 (holding that a five-year time gap does not require exclusion of evidence of prior conduct). Finally, the events testified to were sufficiently similar to the offenses charged. Morris was charged in count 3 with trafficking in a counterfeit credit card. This is precisely what the challenged testimony indicated he had done previously. We see no abuse of discretion in the admission of this evidence.

Morris next contends that, even if the prerequisites for admissibility of the evidence were satisfied, the record fails to show that the district judge properly considered whether probative value substantially outweighed the danger of unfair prejudice, as required by Fed.R.Evid. 403. *See Bailleaux*, 685 F.2d at 1110. This contention is without merit. The district court need not have mechanically cited the rule 403 formula if "it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence before its admission." *United States v. Sangrey*, 586 F.2d 1312, 1315 (9th Cir.1978). Here, the district court reviewed the government's motion in limine to admit the evidence, which described the balancing test required by rule 403, and heard Morris's argument that the probative value of the evidence was outweighed by possible prejudice. The court then ruled in favor of the motion and subsequently gave a limiting instruction to minimize any undue prejudice. It appears clearly from the record that the district judge adequately weighed probative value against possible prejudice.

Finally, Morris argues that unfair prejudice arising from the testimony outweighed its probative value. This contention, too, is meritless. In balancing probative value against possible prejudice, the court must consider the need for the particular evidence "to prove a particular point." *Bailleaux*, 685 F.2d at 1112. Here, the government argued that the evidence was probative as to the issues of identity, preparation or plan, intent to defraud, absence of mistake, and possession. We find that the district court did not abuse its discretion in admitting the evidence. *See id.*

## II

Morris next contends that the district court improperly admitted evidence that was irrelevant and that the inflammatory nature of this evidence unfairly prejudiced him.

### A.

Morris first cites as irrelevant a statement from a government witness indicating that Wells Fargo Bank had "reported losses on credit cards of $1.7 million" through the third quarter of 1984. This statement was made following a question that was originally directed at Wells Fargo's total losses to credit card fraud for the year, but which had been rephrased, following Morris's objection, to relate only to the credit card that the government was then seeking to show Morris had fraudulently used. As such, there is no doubt that the question as rephrased was relevant. The witness's answer was either wrong or was responsive to the prior question. Morris, however, neither objected to the answer nor moved to have it stricken. As such, we can review the admission of this statement only for plain error. Fed.R.Evid. 103(a)(1), 103(d).

A plain error is "a highly prejudicial error affecting substantial rights." *United States v. Sherman*, 821 F.2d 1337, 1339, (9th Cir.1987) (*Sherman*), *quoting United States v. Bustillo*, 789 F.2d 1364, 1367 (9th

Cir.1986). We find no such error here. In view of the overwhelming evidence of Morris's guilt, and the logical irrelevancy of the scope of Wells Fargo's losses to the issue of whether or not Morris, through fraudulent use of credit cards, had caused any of these losses, it does not appear that the admission of this statement was sufficiently prejudicial to have affected substantial rights.

■ Morris also contends, however, that this statement led the district judge to believe that Morris's activities alone had caused losses of $1.7 million, and that this misunderstanding had influenced him when he imposed sentence on Morris. We disagree. Morris's presentence report indicates that the government attributed to the ring with which Morris was involved "more than $100,000 in fraudulent credit card transactions." It is difficult to believe that the district judge could have been laboring at the time of sentencing under the misapprehension that Morris alone was responsible for Wells Fargo's $1.7 million loss.

### B.

■ Morris next claims reversible error because of a statement by a witness that she had changed residences because she "fear[ed] for [her] life." Morris objected immediately and moved for a mistrial. No mistrial was granted but the district judge promptly sustained the objection and struck this portion of the testimony. During his subsequent instructions, he ordered the jury to disregard and not consider "in any way" any stricken testimony.

The issue before us is whether the district judge clearly abused his discretion in not granting the motion for a mistrial. *See United States v. Smith*, 790 F.2d 789, 795 (9th Cir.1986). We conclude that, in light of the district judge's prompt striking of the challenged testimony and his subsequent curative instruction, there was no abuse of discretion. In determining whether a mistrial is warranted when the court strikes testimony and then gives a curative instruction, we

> must weigh the forcefulness of the instruction and the conviction with which it was given against the degree of prejudice generated by the evidence.... In

fixing the degree of prejudice, the probative force of the inadmissible evidence must be compared with that of the admissible evidence which supports the verdict.

*United States v. Johnson*, 618 F.2d 60, 62 (9th Cir.1980) (citations omitted). When the "probative force" of the array of evidence properly admitted against Morris is weighed against any indirect prejudice that might have been implied from the stricken statement, it is clear that the properly admitted evidence significantly outweighed the stricken comment, and that the stray statement caused Morris little, if any, prejudice. In addition, the court's curative instruction was clear and forceful, although it was given only at the conclusion of the trial and did not refer specifically to the challenged testimony. Reviewing the entire record, we conclude that any limited prejudice arising from this stricken isolated remark was insufficient to show that the district judge abused his discretion in not granting a mistrial.

### III

Morris next argues that his convictions were multiplicitous because the offenses charged in counts 3 and 4 and in counts 1 and 2 of the indictment merge. Morris concedes, however, that he did not raise this contention in the district court. We therefore review this issue only for plain error. *Sherman*, at 1339.

■ Charges are not multiplicitous if each count requires proof of a fact which the other does not. *United States v. Roberts*, 783 F.2d 767, 769 (9th Cir.1985), *citing Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). It is clear that counts 3 and 4, as well as counts 1 and 2, meet the *Blockburger* test. Count 3 charged Morris with trafficking in a counterfeit card; count 4 charged him with aiding and abetting an accomplice in the use of a card. These counts require proof of separate facts: in the former case, that Morris transferred a forged card to another party; in the latter, that this other party actually attempted to use the card and that Morris aided her in so

doing. Count 1 charged Morris with possession of a credit-card embossing machine; count 2 charged him with possession of more than fifteen counterfeit cards. These charges obviously require proof of different facts. We see no error, plain or otherwise, in these multiple charges.

Morris also argues that he cannot be sentenced for both counts 3 and 4 and for both counts 1 and 2 because only a single act was involved in each. He claims that he raised this issue in the district court. Our examination of the record, however, leads us to conclude that he did not. Morris's sole argument at sentencing was that count 3, trafficking, and count 4, aiding and abetting, arose in this case from the same act and therefore his lawyer stated "I don't feel that *consecutive* sentences are necessarily appropriate under the circumstances" (emphasis added). He never raised the issue of the imposition of *multiple* sentences. Indeed, Morris was not given the consecutive sentences to which he objected: his sentences on counts 3 and 4 run concurrently. Because Morris failed to raise the multiple sentencing issue in the district court, we review it only for plain error. *Sherman,* at 1339.

■ The nature of the acts alleged in counts 1 and 2—possession of a credit card embossing machine and possession of more than fifteen counterfeit credit cards—suggest that the charged offenses probably involved a series of separate acts and separate criminal undertakings over some period of time. Morris, in any case, points to no evidence whatsoever to suggest that only a single act was involved. We do not find that it was plain error for the court to have treated counts 1 and 2 as involving separate acts and to have imposed sentence accordingly.

■ Counts 3 and 4 present a closer question. It is not clear from the sketchy and conflicting testimony whether Morris's transfer of the counterfeit card to his accomplice Sims during their drive to her house and his subsequent instruction to her, upon stopping along the way at a liquor store, to go inside and use the card to "charge liquor" occurred simultaneously or were separated by some time. The only relevant evidence was from Sims, who tes-

tified on direct examination that Morris handed her the counterfeit card "before [she] got out of the car" but on cross-examination that Morris had given her the card "in the car on the way to the liquor store." In view of the ambiguous nature of the testimony, we can find no plain error in treating the trafficking and the aiding and abetting as separate acts rather than a single act and, therefore, in imposing multiple sentences.

### IV

■ Finally, Morris challenges his sentence because, after he rejected a plea bargain for a 10-year term, the court imposed a 30-year total sentence. Whether harsher sentences were imposed as a punishment for a defendant's assertion of his right to trial is a mixed question of law and fact which we review de novo. *United States v. Carter,* 804 F.2d 508, 510, 513 (9th Cir. 1986) (*Carter*).

While "[a]n accused may not be subjected to more severe punishment for exercising his constitutional right to stand trial," *Carter,* 804 F.2d at 513, *citing United States v. Stockwell,* 472 F.2d 1186, 1187 (9th Cir.) (*Stockwell*), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973), the mere imposition of a heavier sentence after a defendant voluntarily rejects a plea bargain does not, without more, invalidate the sentence. *Carter,* 804 F.2d at 513–14. However, where the court has "taken a hand in" or was "involved in" plea bargaining, or where the record contains statements that give rise to an inference of vindictive sentencing, we require that the record affirmatively show that "no improper weight was given the failure to plead guilty." *Id.* at 514; *Stockwell,* 472 F.2d at 1187–88. Morris argues that the record before us does not contain such a showing and that we should therefore vacate his sentence.

The government contends that the rule of *Stockwell* and *Carter* does not apply in this case because here the district judge was not involved in the plea bargaining process. In *Carter,* 804 F.2d at 510, the district court was "involved" in the process

because it attempted to add a requirement of restitution to the plea bargain. In *Stockwell*, 472 F.2d at 1187, the district court itself evidently proposed the plea bargain. In the case before us, in contrast, the judge merely made the following statement when informed that Morris was considering changing his plea:

> It's my understanding [this matter] was on my calendar today for change of plea....
>
> I understand further that you're charged with four counts, three of which carry the 15 year maximum sentence, one of which carries the 10 year maximum sentence....
>
> I understand the government attorney has made an offer to dispose of this case without trial to the effect if you enter a plea of guilty to the 10–year count, he will move to dismiss the other three counts which means the maximum sentence that the court could impose under those circumstances would be 10 years if you pled guilty to that one count. I don't know what the sentence will be, because I can't know until I see a probation report.
>
> Mr. Bondoc says he wants to have an opportunity to discuss this fully with you so you understand what's before you.... [T]omorrow ... you can meet with Mr. Bondoc, your attorney, here in the courtroom....
>
> I want to give him an opportunity and you an opportunity to discuss the alternatives, simply stating they're offering you a 10–year maximum versus a potential 55 years maximum. That's something you want to think about before you say yes or no too quickly. So I want to be sure you and your attorney have an opportunity to discuss this fully.

We see here no involvement in the plea bargaining process comparable to that found in *Stockwell* or *Carter*. The quoted passage shows only that, when told that Morris was considering changing his plea, the district judge was careful to make certain that Morris understood and considered carefully what the implications would be in relation to his maximum possible sentence. We hold that such a purely explicatory role does not constitute "involvement in plea bargaining" for purposes of *Stockwell* and *Carter*. Cf. Fed.R.Crim.P. 11(e) and Advisory Committee Notes to 1974 Amendment (forbidding judicial involvement in *negotiation* of plea bargain's *terms*). Nor does the quoted passage give rise to any inference of vindictive sentencing. The rule of *Stockwell* and *Carter* is therefore inapplicable to the case before us.

AFFIRMED.