UNITED STATES of America,
Plaintiff–Appellee,

v.

**Fred James LEMAY, III, Defendant–Appellant.**

No. 00–30193.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 2001

Filed Aug. 9, 2001

---

**9.** Cited *supra* p. 1013.

**10.** Cited *supra* pp. 1013, 1015–1016.

John P. Rhodes, Federal Defenders of Montana, Missoula, Montana, for the defendant-appellant.

Marcia Good Sept (Briefed), United States Attorney's Office, Billings, Montana, for the plaintiff-appellee.

Lisa Simotas (Argued), United States Attorney's Office, Billings, Montana, for the plaintiff-appellee.

Before: WOOD, JR.,* TROTT, and PAEZ, Circuit Judges.

Opinion by Judge TROTT; Partial Concurrence and Partial Dissent by Judge PAEZ.

TROTT, Circuit Judge:

Fred LeMay appeals his convictions for two counts of child molestation in violation of 18 U.S.C. §§ 2241 and 3231. We must decide whether admission of his prior acts of child molestation under Rule 414 of the Federal Rules of Evidence violated his constitutional right to due process. We agree with numerous other courts that Rule 403 remains applicable to evidence introduced under Rule 414, and, if conscientiously applied, will protect defendants from propensity evidence so inflammatory as to jeopardize their right to a fair trial. We therefore conclude that Rule 414 is constitutional.

▮ In so holding, we emphasize that Rule 414 is not a blank check entitling the government to introduce whatever evidence it wishes, no matter how minimally relevant and potentially devastating to the defendant. We also emphasize that district courts must apply the balancing test of Rule 403 in a manner that allows for meaningful appellate review. We conclude that the district judge in this case applied Rule 403 conscientiously and did not abuse his discretion in finding that LeMay's prior acts of child molestation were not so prejudicial as to outweigh their probative value. Thus, we can find no constitutional error or abuses of discretion. We therefore AFFIRM LeMay's convictions.

## BACKGROUND

Fred LeMay is a twenty-four-year-old Native American and a member of the Fort Peck Indian tribe. The charges in this case arose from an incident that occurred during the summer of 1997 in Poplar, Montana, on the Fort Peck Indian Reservation. LeMay lived on the Fort Peck Reservation from 1991 to 1998, and intermittently resided at the home of his sister, Justine Shields, and her husband, Daniel Renz. Shields and Renz had several young children, for whom LeMay often babysat. One such instance occurred during the summer of 1997. Shields and Renz had gone out for the evening, leaving LeMay to watch their children D.R. and A.R., two boys ages five and seven.

LeMay made both children orally copulate with him while their parents were away and threatened to beat them up if they told anyone. Undeterred, the boys informed their mother of the abuse the next morning. Although Shields refused to let LeMay babysit for her children after that, she did not report the incident, look for evidence, or take the boys to a doctor or a counselor. Two years later, however, law enforcement authorities got wind of LeMay's abuse of the children and investigated the allegations. LeMay was eventually arrested and charged with child molestation.

Before trial, the prosecutor gave notice of her intent to introduce evidence of LeMay's prior acts of sexual misconduct under Rule 414 of the Federal Rules of Evidence. The evidence consisted of a juvenile rape conviction arising from events that had occurred in 1989, when LeMay was just twelve years old. At that time, LeMay resided with his aunt, Francine LeMay, in Gresham, Oregon. Francine LeMay had two daughters, who in the summer of 1989 were two years and eight months old, respectively.

---

* The Honorable Harlington Wood, Jr., Senior Circuit Judge for the Seventh Circuit, sitting by designation.

As in the 1997 incident for which LeMay was charged, LeMay sexually abused the children while babysitting for them. Francine LeMay returned from the grocery store to find her two-year old daughter upset and bruised. Upon confrontation, Francine LeMay extracted an admission from LeMay that he had "put his penis in" the older child's mouth. Francine LeMay also found a cream-like substance in her infant's vagina when she changed her diaper, and implied that this substance was semen. In a subsequent juvenile adjudication, LeMay was found guilty of rape.

LeMay opposed the prosecution's attempt to introduce this evidence, mounting both a facial and an "as-applied" challenge to the constitutionality of Rule 414. He also claimed that the evidence was not admissible under Rule 403, arguing that its potential for prejudice far outweighed its probative value. After an extensive pretrial hearing, the district judge rejected LeMay's facial constitutional challenge. The judge reserved the "as applied" and Rule 403 challenges until trial, in order to be able to determine more accurately whether the prosecution's proffered evidence would be relevant. The judge observed that "[a] full evaluation of all the evidence and the appropriate balancing test to be applied in this case is best left for trial."

At trial, the prosecution called both A.R. and D.R., who by that time were seven and nine years old. Both boys remembered the incidents and testified consistently. The prosecution also called the boys' mother, Justine Shields. Because Shields had not informed anyone that LeMay had molested her children, the prosecution was unable to offer any forensic, medical, or psychological evidence that the boys had been abused, and the case therefore rested on their testimony.

LeMay took advantage of this lack of evidence in his opening statement, arguing that no eyewitnesses or medical or scientific experts would corroborate the testimony of A.R. and D.R. Further, in cross-examining the boys, LeMay's counsel attempted to call into question their ability to remember events accurately. He also suggested that the boys might have a motive to lie because they were currently in foster care, and that they might have thought that accusing LeMay of molesting them would be a way to be reunited with their parents.

After A.R., D.R., Shields, and the investigator testified, the judge decided the remaining Rule 414 issues. He determined that Rule 403 did not otherwise preclude the introduction of the prior acts of molestation, and that Rule 414 was not unconstitutional as applied to LeMay. In conducting the Rule 403 balancing test, the judge stated:

> On examination of each of the boys in question, there [have] been substantial issues raised concerning their credibility....
>
> There's a substantial issue that goes to the credibility of all of the persons involved in the care of these children.
>
> And I find that the evidence proffered by the government is relevant to issues of credibility. It is also relevant in rebutting the suggestion that there's no proof that this happened, which was made by the defendant in his opening statement, and that there would be no witnesses, medical, psychological, or eyewitnesses called. And, consequently, I am going to admit the evidence over the objection of the defendant.

Before allowing the prosecution to present its prior act evidence, however, the judge gave the jury the following limiting instruction:

You are going to hear testimony from this witness and this testimony has a limited purpose. The limited purpose is as it may bear on the credibility of witnesses from whom you have already heard testimony. The evidence you are about to hear is not evidence of guilt in this case of the defendant, per se, it is evidence that can be considered by you for any purpose to which it is relevant in terms of the issues in this case.

After this instruction, the prosecutor called her last two witnesses. She first called Francine LeMay, who testified about the defendant's abuse of her children in Oregon in 1989. Ms. LeMay, who began her testimony in tears, described generally how she had discovered that LeMay had abused her daughters and how she had gotten him to admit to that abuse. The prosecution's final witness established that LeMay had been found guilty of rape in a juvenile adjudication. After these witnesses, the prosecution closed its case.

When both sides had rested, the district court reminded the jury that LeMay was on trial for the acts charged in the indictment, and not for the acts of molestation that occurred in 1989. Over LeMay's objection, the judge instructed that "the defendant is not on trial for any conduct or offense that is not charged in the indictment. You should consider any evidence about other acts of the defendant that you have heard ... only as those acts may bear on the matter that is relevant in this case."

The jury found LeMay guilty of both counts of molestation, and the district judge sentenced him to 405 months in prison.

## DISCUSSION

### A. Standard of Review

We review *de novo* a claim that a statute or a rule is unconstitutional. *See, e.g., United States v. Hanousek,* 176 F.3d 1116, 1121 (9th Cir.1999). However, a district judge's ruling under Rule 403 that evidence is more probative than prejudicial is reviewed for an abuse of discretion. *See, e.g., United States v. Leon–Reyes,* 177 F.3d 816, 821 (9th Cir.1999).

### B. Due Process

Prior to 1994, when Rules 413 through 415 were passed, admission of a defendant's prior crimes or acts was governed by Rule 404(b), which disallows such evidence when used to prove "the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b). Rule 414 changes this general rule with respect to child molestation cases. It makes such evidence admissible, providing that:

> In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

FED. R. EVID. 414(a). LeMay contends that Rule 414 violates due process principles by removing the longstanding ban on propensity evidence in criminal trials. He argues that the traditional rule precluding the use of a defendant's prior bad acts to prove his disposition to commit the type of crime charged is so ingrained in Anglo–American jurisprudence as to be embodied in the due process clause of the Constitution. LeMay has a very high burden in proving this assertion, and we conclude he has not met it.

#### 1. Applicable Law

The Constitution does not encompass all traditional legal rules and customs, no matter how longstanding and widespread such practices may be. The Supreme Court has cautioned against the

wholesale importation of common law and evidentiary rules into the Due Process Clause of Constitution. In *Dowling v. United States,* for example, the Court held that a rule or practice must be a matter of "fundamental fairness" before it may be said to be of constitutional magnitude. 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). The Court stated:

> [B]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate "fundamental fairness" very narrowly.... Judges are not free, in defining due process, to impose on law enforcement officials their personal and private notions of fairness and to disregard the limits that bind judges in their judicial function. They are to determine only whether the action complained of violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency.

*Id.* (internal quotations and citations omitted). Additionally, "[i]t is not the State which bears the burden of demonstrating that its rule is 'deeply rooted,' but rather [the defendant]." *Montana v. Egelhoff,* 518 U.S. 37, 47, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality opinion). Thus, we must decide if LeMay has shown that the traditional ban on propensity evidence involves a "fundamental conception of justice." *Id.* We conclude he has not.

#### 2. Historical Evidence

 The Supreme Court has held that the primary guide for determining whether a rule is so "fundamental" as to be embodied in the Constitution is historical practice. *See Egelhoff,* 518 U.S. at 43, 116 S.Ct. 2013. In this case, however, evidence of historical practice does not lead to a clear conclusion. On the one hand, it seems clear that the general ban on propensity evidence has the requisite historical pedigree to qualify for constitutional status. *See, e.g., McKinney v. Rees,* 993 F.2d 1378, 1384–85 (9th Cir.1993) (holding in the context of a murder prosecution that "[t]he character rule is based on ... a 'fundamental conception of justice' and the 'community's sense of fair play and decency' "); *Old Chief v. United States,* 519 U.S. 172, 182, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (stating in dicta that "[t]here is ... no question that propensity would be an 'improper basis' for conviction"); *Michelson v. United States,* 335 U.S. 469, 475–76, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (noting in dicta that "[c]ourts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt").

On the other hand, courts have routinely allowed propensity evidence in sex-offense cases, even while disallowing it in other criminal prosecutions. In many American jurisdictions, evidence of a defendant's prior acts of sexual misconduct is commonly admitted in prosecutions for offenses such as rape, incest, adultery, and child molestation. *See, e.g.,* 2 JOHN H. WIGMORE, WIGMORE ON EVIDENCE, §§ 398–402. As early as 1858, the Michigan Supreme Court noted that "courts in several of the States have shown a disposition to relax the rule [against propensity evidence] in cases where the offense consists of illicit intercourse between the sexes." *People v. Jenness,* 5 Mich. 305, 319–20, 1858 WL 2321 at *8 (Mich.1858). Today, state courts that do not have evidentiary rules comparable to Federal Rules 414 through 415 allow this evidence either by stretching traditional 404(b) exceptions to the ban on character evidence or by resorting to the so-called "lustful disposition" exception, which, in its purest form, is a rule allowing for propensity inferences in sex

crime cases. *See, e.g.*, Thomas J. Reed, *Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases*, 21 AM. J. CRIM. L. 127, 188 (1993). Thus, "the history of evidentiary rules regarding a criminal defendant's sexual propensities is ambiguous at best, particularly with regard to sexual abuse of children." *United States v. Castillo*, 140 F.3d 874, 881 (10th Cir.1998).

### 3. Rule 403

The historical evidence in this case thus leads to no clear conclusion. In holding that Rule 414 is constitutional, we therefore do not rely solely on the fact that courts have historically allowed propensity evidence to reach the jury in sex offense cases. Because LeMay has the burden of proving that the ban on propensity evidence is a matter of fundamental fairness, the divergence in historical evidence does cut against his position. *See Egelhoff*, 518 U.S. at 47, 116 S.Ct. 2013. Yet while we recognize the importance of historical practice in determining whether an evidentiary rule is embodied in the Due Process Clause, in this case, we find it necessary to conduct an independent inquiry into whether allowing propensity inferences violates fundamental ideas of fairness.

We conclude that there is nothing fundamentally unfair about the allowance of propensity evidence under Rule 414. As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded.

■ Although this court has never squarely addressed the issue of whether Rule 414 and its companion rules are constitutional, we have recently held that the balancing test of Rule 403 continues to apply to those rules, and that district judges retain the discretion to exclude evidence that is far more prejudicial than

probative. *See Doe by Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir.2000) (rejecting claim that Rule 415, which allows for introduction of prior sexual misconduct in civil sexual assault or child molestation cases, eliminates balancing protections of Rule 403).

■ With the protections of the Rule 403 balancing test still in place, LeMay's due-process challenge to Rule 414 loses much of its force. The evidence that he had sexually molested his cousins in 1989 was indisputably relevant to the issue of whether he had done the same thing to his nephews in 1997. *See, e.g., Michelson*, 335 U.S. at 475, 69 S.Ct. 213 (noting that defendant's prior crimes or ill name "might logically be persuasive that he is by propensity a probable perpetrator of the crime"). The introduction of relevant evidence, by itself, cannot amount to a constitutional violation.

■ Likewise, the admission of prejudicial evidence, without more, cannot be unconstitutional. All evidence introduced against a criminal defendant might be said to be prejudicial if it tends to prove the prosecution's case. Moreover, evidence that a defendant has committed similar crimes in the past is routinely admitted in criminal prosecutions under Rule 404(b) to prove preparation, identity, intent, motive, absence of mistake or accident, and for a variety of other purposes. FED. R. EVID. 404(b).

■ The introduction of such evidence can amount to a constitutional violation only if its prejudicial effect far outweighs its probative value. In *McKinney*, we granted a writ of habeas corpus and overturned a murder conviction where the petitioner's trial had been infused with highly inflammatory evidence of almost no relevance. *See McKinney*, 993 F.2d at 1384–85. LeMay, of course, emphasizes

that *McKinney* held that the ban on propensity evidence is of constitutional magnitude. What he misses, however, is the fact that we held that such evidence will only *sometimes* violate the constitutional right to a fair trial, if it is of no relevance, or if its potential for prejudice far outweighs what little relevance it might have. Potentially devastating evidence of little or no relevance would have to be excluded under Rule 403. Indeed, this is exactly what Rule 403 was designed to do. We therefore conclude that as long as the protections of Rule 403 remain in place so that district judges retain the authority to exclude potentially devastating evidence, Rule 414 is constitutional.

Several courts have reached the same conclusion. In *Castillo*, for example, the Tenth Circuit noted that "[a]pplication of Rule 403 ... should always result in the exclusion of evidence" that is so prejudicial as to deprive the defendant of his right to a fair trial, and that "application of Rule 403 to Rule 414 evidence eliminates the due process concerns posed by Rule 414." 140 F.3d at 883. Applying nearly identical reasoning, the Tenth Circuit has also affirmed the constitutionality of Rule 413, which allows for propensity inferences in rape and sexual assault cases. *See United States v. Enjady*, 134 F.3d 1427, 1430–35 (10th Cir.1998). Other courts have agreed. *See, e.g., United States v. Mound*, 149 F.3d 799, 800–802 (8th Cir.1998) (concluding that Rule 413 passes constitutional muster if Rule 403 protections remain in place); *United States v. Wright*, 53 M.J. 476 (C.A.A.F.2000) (same); *Kerr v. Caspari*, 956 F.2d 788, 790 (8th Cir.1992) (holding that a Missouri rule allowing for propensity inferences in sex crime prosecutions is constitutional as long as Rule 403 test is applied).

We join these courts in holding that Rule 414 does not violate the Due Process Clause of the constitution. The admission of relevant evidence, by itself, cannot amount to a constitutional violation. Nor does the admission of even highly prejudicial evidence necessarily trespass on a defendant's constitutional rights. Thus, the claim that Rule 414 is unconstitutional can be reduced to a very narrow question: "whether admission of ... evidence that is both relevant under Rule 402 and not overly prejudicial under 403 may still be said to violate the defendant's due process right to a fundamentally fair trial." *Castillo*, 140 F.3d at 882. As the *Castillo* court noted, "to ask that question is to answer it." Rule 414 is constitutional on its face.

## C. Rule 403

■ LeMay also argues that even if Rule 414 is facially constitutional, it is unconstitutional as applied to him, and that the district judge abused his discretion in admitting the evidence under Rule 403. If the prior acts of molestation were properly admitted under Rule 403, there can have been no as-applied constitutional violation. *Castillo*, 140 F.3d at 882. We therefore first address whether admitting the evidence was an abuse of discretion. We conclude that it was not.

■ Rule 403 provides that relevant evidence may be excluded, among other reasons, if "its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. In *Glanzer*, we stated that "[b]ecause of the inherent strength of the evidence that is covered by [Rule 414], when putting this type of evidence through the [Rule 403] microscope, a court should pay 'careful attention to both the significant probative value and the strong prejudicial qualities' of that evidence." *Glanzer*, 232 F.3d at 1268 (quoting *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir.1998)). We also articulated several factors that district judges must evaluate in determining

whether to admit evidence of a defendant's prior acts of sexual misconduct. These factors are: (1) "the similarity of the prior acts to the acts charged," (2) the "closeness in time of the prior acts to the acts charged," (3) "the frequency of the prior acts," (4) the "presence or lack of intervening circumstances," and (5) "the necessity of the evidence beyond the testimonies already offered at trial." *Id.* We also stated that this list of factors is not exclusive, and that district judges should consider other factors relevant to individual cases. *Id.*

We had not decided *Glanzer* at the time of LeMay's trial and so the district judge did not explicitly consider each of the factors we articulated there in making his 403 ruling. However, the district judge did conduct just the sort of searching inquiry we deemed necessary in *Glanzer.* He held an extensive pre-trial hearing, at which he grilled the prosecutor about all aspects of Rule 414, and questioned her as to why she needed the prior acts evidence and how she intended to introduce it. The judge also reserved the Rule 403 decision until after the prosecution had introduced all its other evidence, in order to get a feel for the evidence as it developed at trial before ruling on whether LeMay's prior acts of child molestation could come in. After hearing the opening statements and the prosecutor's case, the judge concluded that the prior molestations were relevant to bolster the credibility of D.R. and A.R., and to rebut the suggestion that there was no evidence to corroborate their testimony. Finally, the district court reminded the jury in its final instructions that, while it could consider the prior acts evidence for any matter which it deemed relevant, it could only convict LeMay for the charged crimes. In short, although the district judge did not discuss the specific factors we deemed relevant in *Glanzer,* the record reveals that he exercised his discretion to admit the evidence in a careful and judicious manner.

We also conclude that admitting LeMay's prior acts of molestation was proper in light of the factors we discussed in *Glanzer* and others relevant to this particular case. We begin by noting, as the district judge did, that the evidence of LeMay's prior acts of child molestation was highly relevant. The 1989 molestations were very similar to the charged crimes. Each case involved forced oral copulation. In each case the victims were young relatives of LeMay, and each instance occurred while LeMay was babysitting them.

Moreover, as the district judge suggested, the prior acts evidence was relevant to bolster the credibility of the victims after LeMay suggested they could be fabricating the accusations. The evidence also countered LeMay's claim that there was no evidence corroborating the testimony of D.R. and A.R.

We recognize that this characterization of the evidence is essentially a veiled propensity inference. *See, e.g.,* Wright & Graham, 22 FEDERAL PRACTICE AND PROCEDURE § 5248 (noting that use of prior act evidence to "corroborate" testimony of victims is propensity evidence if it "depends upon an inference to the defendant's character"). However, it is also exactly the sort of use of prior acts evidence that Congress had in mind when enacting Rule 414. *See* 140 Cong. Rec. H8991–92 (August 21, 1994) (statement of Rep. Molinari) (noting that child molestation cases "require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration"). The case against LeMay rested on testimony of D.R. and A.R. Both children were very young at the time of the incidents, and two years had passed before LeMay was tried. LeMay

attacked their credibility and suggested that there was not enough evidence to prove their allegations. That this case made use of the prior acts evidence in precisely the manner Congress contemplated strongly indicates that its admission was not an abuse of discretion.

■ Additionally, the evidence of LeMay's prior abuse of his cousins was also highly reliable. LeMay had been convicted of at least one of the rape charges arising from the incidents in Oregon. Because LeMay had admitted to abusing his cousins, Francine LeMay's testimony fell within a well-established exception to the hearsay rule. To the extent that allowing the evidence permitted a propensity inference, it was an inference based on proven facts and LeMay's own admissions, not rumor, innuendo, or prior uncharged acts capable of multiple characterizations. Thus, although we do not suggest that district courts may *only* introduce prior acts of molestation for which a defendant has been tried and found guilty, we hold that the extent to which an act has been proved is a factor that district courts may consider in conducting the Rule 403 inquiry.

We must also consider the remoteness in time of LeMay's prior acts of molestation, the frequency of prior similar acts, and whether any intervening events bear on the relevance of the prior similar acts. *See Glanzer*, 232 F.3d at 1268. The "intervening events" factor seems to have little relevance in the present case, and the other two cut in favor of the government. About eleven years had passed between LeMay's abuse of his nieces and his trial for the abuse of D.R. and A.R.. We have held, in the context of Rule 404(b), that the lapse of twelve years does not render the decision to admit relevant evidence of similar prior acts an abuse of discretion. *See United States v. Rude*, 88 F.3d 1538, 1550 (9th Cir.1996). The "frequency of events"

factor discussed in *Glanzer* also cuts in favor of the government. Although it was not introduced at trial, the government also had evidence of a third incident in which LeMay had sexually abused his young relatives. True, this incident occurred even before the 1989 abuse of his cousins when LeMay himself was extremely young, and, as the prosecutor noted, was "triple hearsay." However, that there was evidence of a third similar incident suggests that LeMay's abuse of his cousins in 1989 was not an isolated occurrence.

■ *Glanzer* also instructs that courts must consider whether the prior acts evidence was necessary to prove the case. This factor also supports the government's position and indicates that the district judge did not abuse his discretion in admitting the evidence. The prosecution's case rested on the testimony of A.R. and D.R. No other scientific, forensic, medical, or psychological witness was available. LeMay had attacked the credibility of the boys and capitalized on the lack of eyewitness and expert testimony. That the prosecutor claimed that she could get a conviction without introducing LeMay's prior acts of molestation does not suggest that the evidence was not "necessary." Prior acts evidence need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary.*

Finally, Francine LeMay's testimony was necessary to establish that LeMay's 1989 molestations were very similar, and thus relevant, to the charged crimes. We reject the idea that the district court should have limited the prosecution to merely proving that LeMay had been convicted of rape eleven years before. The relevance of the prior act evidence was in the details. Establishing the simple fact of conviction would leave out the information that LeMay had been convicted of

sexually abusing his young relatives, by forced oral copulation, while they were in his care. Francine LeMay's testimony was necessary to fill in the details that made the prior rape conviction relevant. Therefore, the "necessity" factor favors the government in all respects.

 Several factors do admittedly favor LeMay. LeMay himself was only twelve years old at the time of the 1989 molestations. And foremost, of course, is the emotional and highly charged nature of Francine LeMay's testimony. Although we, as an appellate court, are not in a position to evaluate how great an effect Francine LeMay's testimony had on the jury, we do not doubt that it was powerful. Francine LeMay began her testimony in tears, and certainly, her suggestion that LeMay had raped her infant daughter would have been particularly shocking. However, evidence of a defendant's prior acts of molestation will always be emotionally charged and inflammatory, as is the evidence that he committed the charged crimes. Thus, that prior acts evidence is inflammatory is not dispositive in and of itself. Rather, district judges must carefully evaluate the potential inflammatory nature of the proffered testimony, and balance it with that which the jury has already heard, the relevance of the evidence, the necessity of introducing it, and all the other relevant factors discussed above. The record here shows that the district judge did just that. Therefore, admitting LeMay's prior acts of molestation was not an abuse of discretion.

All in all, the record shows that the district judge struck a careful balance between LeMay's rights and the clear intent of Congress that evidence of prior similar acts be admitted in child molestation prosecutions.

## D. Equal Protection

LeMay also argues that Rule 414 violates his right to equal protection. LeMay proffers various theories to support this claim. We reject these arguments.

 First, Rule 414 does not discriminate against any group of individuals on the basis of a suspect or quasi-suspect class. Sex offenders are not a suspect class. LeMay, however, argues that Rule 414 has a far greater impact on Native Americans because they are far more likely than members of other races to be prosecuted federally for child molestation. LeMay may be correct that a disproportionately large number of federal child molestation prosecutions involve Indian defendants. But this disproportion, if true, would arise simply because the federal government only has jurisdiction over crimes such as child molestation when they arise on Indian Reservations, military bases, or other federal enclaves. There is no evidence of any intent on the part of Congress to discriminate against Native Americans, and LeMay's claim therefore is without merit. *See Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

 LeMay also argues that Rule 414 violates equal protection principles because it deprives child molesters of a "fundamental right" enjoyed by other criminal defendants. This claim also fails. As discussed above, LeMay has no fundamental right to have a trial free from relevant propensity evidence that is not unduly prejudicial. Although the right to a fair trial may in some instances preclude the introduction of highly inflammatory evidence completely out of proportion to its probative value, *McKinney*, 993 F.2d at 1384–86, Rule 403 ensures that evidence which is so prejudicial as to jeopardize a defendant's right to a fair trial will be excluded. Thus, the claim that Rule 414 unfairly impinges on

sex offenders' fundamental right to a fair trial also fails.

Because Rule 414 does not burden a fundamental right, and because sex offenders are not a suspect class, Rule 414 is constitutional if it bears a reasonable relationship to a legitimate governmental interest. Prosecuting crime effectively is certainly a legitimate governmental interest. Rule 414 furthers that interest by allowing prosecutors to introduce relevant evidence to help convict sex offenders. LeMay's equal protection arguments are therefore without merit.

### E. Remaining Arguments

 LeMay also argues that Rule 414 undermines the presumption of innocence and permits irrational evidentiary inferences. Rule 414 does neither of these things. To support these contentions, LeMay relies on Supreme Court cases that deal with unconstitutional evidentiary *presumptions*. *See, e.g., Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). Rule 414 does not create a presumption that a defendant is guilty because he has committed similar acts in the past; it merely allows the jury to consider prior similar acts along with all other relevant evidence. Moreover, although the inference that because a person has done something once, he might be more likely to have done it again has until recently been impermissible, it is certainly not irrational.

LeMay also contends that Rule 414 violates the "due process reciprocity requirement" because it would, as he puts it, prevent him "from introducing the exact type of evidence regarding the alleged victim that Rule 414 permits the Government to introduce against the defendant." Given the age of LeMay's chosen victims, this claim is nonsensical.

 Finally, LeMay contends that the rule violates the Eighth Amendment ban on cruel and unusual punishment. This argument fails. As the Tenth Circuit stated in *Castillo*, "[Rule 414] does not impose criminal punishment at all; it is merely an evidentiary rule.... For the defendant to be correct [that Rule 414 punishes one's status as a sex offender] juries would have to ignore courts' instructions to them that they consider only *the crime charged* in deciding whether to convict." *Castillo*, 140 F.3d at 884. The prosecution's other witnesses provided enough evidence that we are convinced that LeMay was not convicted for his status as a sex offender.

### CONCLUSION

 In sum, we hold that Rule 414 is constitutional and does not violate due process, equal protection, or any other constitutional guarantee. Rule 403 adequately safeguards the right to a fair trial. We emphasize, however, that evidence of a defendant's prior sex crimes will always present the possibility of extreme prejudice, and that district courts must accordingly conduct the Rule 403 balancing inquiry in a careful, conscientious manner that allows for meaningful appellate review of their decisions. District courts should also examine the relevant factors we discussed in *Glanzer*, those we articulated here, and any others that might have relevance to a particular case. Because the record before us shows that the district judge's decision to admit the evidence under Rule 403 was conducted in a careful and conscientious manner, we can find no abuse of discretion. We therefore AFFIRM LeMay's convictions.

**AFFIRMED.**

PAEZ, Circuit Judge, concurring in part and dissenting in part:

I concur in all but Discussion § C of the majority's decision. I respectfully dissent from the majority's holding that the district court did not abuse its discretion in

admitting the evidence under Fed.R.Evid. 403. I would reverse the district court's Rule 403 ruling and remand for reconsideration in light of our decision in *Doe by Rudy–Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir.2000) (hereinafter *Glanzer* ).

Generally, a "district court need not recite the Rule 403 test when balancing the probative value of evidence against its potential for unfair prejudice" so long as "the record, as a whole, indicates that the court properly balanced the evidence." *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir.1992) (citing *United States v. Morris*, 827 F.2d 1348, 1350 (9th Cir.1987)). However, we recognized in *Glanzer* that "[b]ecause of the inherent strength of the evidence that is covered by Fed.R.Evid. [414], when putting this type of evidence through the Fed.R.Evid. 403 microscope, a court should pay 'careful attention to both the significant probative value and the strong prejudicial qualities' of that evidence." 232 F.3d at 1268 (quoting *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998)).

In *Glanzer*, we identified five factors that district courts should consider in their Rule 403 analysis: (1) "the similarity of the prior acts charged;" (2) the "closeness in time of the prior acts to the acts charged;" (3) "the frequency of the prior acts," (4) the "presence or lack of intervening circumstances;" and (5) "the necessity of the evidence beyond the testimonies already offered at trial." 232 F.3d at 1268.[1] We went on to hold that "the district court [must] fully evaluate the factors enumerated above, and others that might arise on a case-by-case basis, and make a clear record concerning its decision whether or not to admit such evidence." *Id.* at 1268–69.

Generally, evidence of prior criminal activity offered "to prove the character of a person in order to show action in conformity therewith" is not admissible. Fed. R.Evid. 404(b). Such evidence is only admissible if it helps prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." *Id.* Rules 413, 414, and 415 reverse this traditional rule and create a "presumption in favor admission" for highly prejudicial evidence. *United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998). These rules were explicitly designed to allow the introduction of evidence of prior sexual crimes in order to prove propensity. *See* 140 Cong. Rec. H5437–03, *H5438 (daily ed. June 29, 1994) (statement of Rep. Kyl) ("In sex-related crimes, it can be particularly useful to demonstrate a propensity of the accused to commit similar prior offenses.").

Rules 413, 414, and 415 were extraordinarily controversial at the time of their passage. The Judicial Conference Advisory Committee on Evidence Rules and the Judicial Conference Committee on Rules of Practice and Procedure both voted overwhelmingly to oppose the rules because they "would permit the introduction of unreliable but highly prejudicial evidence...." Fed.R.Evid. 413 hist. notes. The report submitted by the Judicial Conference to Congress expressed "significant

---

1. In *Glanzer,* we also explained that this list of factors is not exhaustive. The additional factors identified by the Tenth Circuit in *United States v. Enjady,* 134 F.3d 1427, 1433 (10th Cir.1998) are also helpful in conducting Rule 403 analysis of Rule 414 evidence:

 1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; [4)] whether the government can avail itself of any less prejudicial evidence[;] ... [5)] how likely it is such evidence will contribute to an improperly-based jury verdict; [6)] the extent to which such evidence will distract the jury from the central issues of the trial; and [7)] how time consuming it will be to prove the prior conduct.

concern" about the "danger of convicting a criminal defendant for past, as opposed to charged, behavior or for being a bad person." *Id.*

Nevertheless, there are benefits to these rules. As members of Congress repeatedly recognized, "[i]n most rape or molestation cases, it is the word of the defendant against the word of the victim. If the defendant has committed similar acts in the past, the claims of the victim are more likely to be considered truthful if there is substantiation of other assaults." 140 Cong. Rec. H5437–03, *H5439 (daily ed. June 29, 1994) (statement of Rep. Kyl). This case, with two child victims and no other witnesses, is precisely the type of case for which Fed.R.Evid. 414 was designed.

As courts, we are left to balance the public's interest in convicting those charged with sexual abuse crimes, as expressed in these evidentiary rules, with the right of the accused to be convicted only for the crime charged, and not his previous acts. LeMay served his sentence for his previous criminal acts, and he may not be punished again, unless the government can prove that he committed new crimes as well. The best way for district courts to balance these competing interests is to conduct the Rule 403 analysis on the record, carefully considering each of the factors, and others as necessary, identified by this court in *Glanzer*.

In *Glanzer*, in contrast to this case, the district court did conduct the Rule 403 analysis on the record. "The district court reiterated the factors used under the Fed. R.Evid. 403 balancing test," but also considered "the remoteness in time" of the earlier act, the lack of similarity between the two incidents, the lack of a pattern of behavior, and the victim's reliability. 232 F.3d at 1269. We observed that "it is difficult to imagine a scenario in which a district court could do more than the district court did in this case." *Id.*

In this case, the district court made no record of its Rule 403 analysis at all. Unlike *Glanzer*, there was much more the district court could—and should—have done. In fact, the district court did not even identify the probative value of the evidence, only describing it as "relevant." There is a marked difference between describing evidence as relevant and describing it as having probative value significant enough to outweigh any unfair prejudicial effect. *See Old Chief v. United States,* 519 U.S. 172, 184, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) ("[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives."). We explained in *Glanzer* that there is a presumption that prior sex crimes evidence is relevant. 232 F.3d at 1268 ("[I]t is generally accepted that a defendant with a propensity to commit acts similar to those charged is more likely to have committed the charged act than another and therefore such evidence is relevant. . . ."). The probative value of evidence is determined by considering the strength of and the need for that relevant evidence.

In this case, the district court found that evidence of LeMay's prior conviction was "relevant" to bolstering the child witnesses' credibility and to rebutting the suggestion that there was no proof that a crime actually occurred. But the district court later made an explicit factual finding that the two victims were "extremely credible," that their testimony was clear, and that they testified with certitude and impressive demeanor. This, combined with the prosecution's own assertion that the children's testimony alone was sufficient for a conviction, suggests that the prior acts evidence had minimal probative value.

That minimal probative value should have been weighed against the risk of unfair prejudice to LeMay.

Because the district court did not conduct the 403 balancing on the record and consider the *Glanzer* factors, I would find that it abused its discretion. *See Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("A district court by definition abuses its discretion when it makes an error of law."). But because the district court did not have the benefit of our later decision in *Glanzer*, I would reverse the Rule 403 ruling and remand to the district court for reconsideration.

Although the majority undertakes a thoughtful Rule 403 analysis, I believe that decision is better suited to the district court. Appellate courts have long recognized that we should give great deference to the evidentiary decisions of district courts. "[T]he trial court in the exercise of its discretion is more competent to judge the exigencies of a particular case." *Brigham Young Univ. v. Lillywhite*, 118 F.2d 836, 841 (10th Cir.1941). In this case, the district court is in a far better position than we to assess the intangibles that are not conveyed well by a cold transcript: the persuasiveness of the young victims' testimony; the success of defense counsel's efforts to undermine their credibility; and the probative value the presentation of prior conviction would have had in the absence of the mother's testimony.

I do not quarrel with the district court's decision to defer its decision on the Rule 414 evidence until after the victims' testimony. At the point at which the prosecution sought to admit the prior acts evidence, however, the district court's analysis should have been considered on the record. Furthermore, the district court should have considered each piece of proposed evidence individually and cumulatively. The testimony of the law enforcement officer, and the documentary evidence establishing the fact of LeMay's prior conviction, were certainly less prejudicial than the earlier victims' mother's emotional and graphic testimony, which was likely to generate a greater emotional reaction in the jury. *See* Fed.R.Evid. 403 adv. comm. note (" 'Unfair prejudice' ... means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). There was no disagreement between the parties about whether the acts for which LeMay was earlier convicted were similar to the charged crimes. Proving similarity seems to be the primary purpose of the earlier victims' mother's testimony. Because there was no need to prove similarity, I do not see why the victims' mother needed to testify at all. The law enforcement officer and the documents should have been sufficient. The prosecution also conceded at the pretrial hearing on this evidence that it did not need the victims' mother to testify to prove the earlier acts.

If the district court were to find on remand that no evidence of a prior conviction should have been admitted under *Glanzer*, or at a minimum that the mother's testimony should have been excluded, LeMay would be entitled to a new trial. *Cf. United States v. Amador–Galvan*, 9 F.3d 1414, 1418 (9th Cir.1993) (reversing a district court's evidentiary rulings and ordering that if, on remand, "the district court decides that disclosure of the informants' identities or admission of the expert testimony was necessary at trial, [the defendants] must be granted a new trial"). But if after balancing the factors, the district court were to determine that the probative value of this evidence outweighed its prejudicial effect, then the conviction should stand. Now with the benefit of our decision in *Glanzer*, the district court, in my judgment, is better suited to consider

the issue in the first instance. Accordingly, I dissent.

