NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 23 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

HENRY BENSON,

      Defendant - Appellant.

No. 24-2932

D.C. No.
2:19-cr-00035-DAD-1

MEMORANDUM[*]

Appeal from the United States District Court
for the California Eastern
Dale A. Drozd, District Judge, Presiding

Argued and Submitted September 15, 2025
San Francisco, California

Before: M. SMITH and BUMATAY, Circuit Judges, and BARKER, District
Judge.[**]

Defendant-Appellant Henry Benson appeals his judgment and commitment

order following a jury trial. We have jurisdiction pursuant to 28 U.S.C. § 1291,

and we affirm Benson's convictions. Because the parties are familiar with the

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable J. Campbell Barker, United States District Judge for
the Eastern District of Texas, sitting by designation.

facts of this case, we do not recount them here, except as necessary to provide context to our ruling.

Benson argues that the district court: (i) abused its discretion by striking his alleged admission rather than declaring a mistrial; (ii) abused its discretion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), by admitting expert testimony from Special Agent Nehring about guns as a tool of the trade for drug distribution; and (iii) plainly erred by allowing Nehring to give expert testimony while testifying as a lay witness. Benson also claims he suffers from cumulative error. We disagree.

1. We review a district court's denial of a motion for a mistrial for abuse of discretion. *See United States v. Lemus*, 847 F.3d 1016, 1024 (9th Cir. 2016). When a district court gives an instruction to strike testimony in lieu of a mistrial, we usually defer to it. *See id.* Ultimately, "[a] decision to not declare a mistrial will be reversed only if the improper comment, viewed in the context of the entire trial, more likely than not materially affected the verdict." *Id.* To determine whether evidence more likely than not materially affected the verdict, we "must weigh the forcefulness of the instruction and the conviction with which it was given against the degree of prejudice generated by the evidence." *United States v. Morris*, 827 F.2d 1348, 1351 (9th Cir. 1987) (quoting *United States v. Johnson*, 618 F.2d 60, 62 (9th Cir. 1980)).

The district court did not abuse its discretion by striking Nehring's testimony rather than declaring a mistrial. In our view, it is not more likely than not that Benson's alleged admission materially affected the jury's verdict. The district court gave a forceful curative instruction, and Benson overstates the prejudice stemming from his alleged admission. Notably, the government did not draw attention to the alleged admission when eliciting it. Instead, it was Benson's counsel who prompted Nehring to repeat the statement, and it was the government, not Benson, that later moved to strike it. While the alleged statement had some probative force to suggest that Benson possessed the gun in furtherance of a drug trafficking offense, the government had other admissible evidence to support the verdict. *See id.* For example, the government presented evidence demonstrating the gun's proximity to a large quantity of pills and pill-making supplies in Benson's bedroom. Benson's closing argument also acknowledged that the shotgun was not a hunting weapon or an antique, but a "home defense weapon."

We further conclude that the district court was not required to bar Nehring from testifying about guns as an expert following Nehring's improper testimony— an argument for which Benson provides no authority.

2. The district court did not abuse its discretion under *Daubert* by admitting Nehring's expert testimony about guns as tools of the trade in drug distribution. Benson argues that the district court improperly used Nehring's qualifications to

3                                                                 24-2932

make determinations about his testimony's reliability, rather than evaluating its scientific validity or methodology. We instead conclude that the district court properly distinguished Nehring's qualifications from his testimony's reliability. *See United States v. Holguin*, 51 F.4th 841, 853–55 (9th Cir. 2022). It separately deemed Nehring's opinions to be reliable and Nehring to be qualified based on his experience.

It is true that courts often test an expert's reliability by applying the five *Daubert* factors, but the *Daubert* factors "simply are not applicable to . . . testimony[] whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *See United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). "In such cases, the inquiry may cover whether the expert's experience supports the expert's conclusions; whether the expert's reasoning is circular, speculative, or otherwise flawed; or whether the expert's reasoning is adequately explained." *Holguin*, 51 F.4th at 855 (internal citations omitted). The district court relied on such an inquiry here. A law enforcement officer is unlike a chemist or physicist; an officer opining about criminal behavior necessarily must rely on his knowledge or experience.

3. The district court did not plainly err by permitting Nehring to give expert testimony while testifying as a lay witness. "Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Williams*, 5 F.4th

973, 978 (9th Cir. 2021) (quoting *United States v. Wang*, 944 F.3d 1081, 1085 (9th Cir. 2019)). "If these three conditions are met, [we] may then exercise [our] discretion to grant relief if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alterations in original) (quoting the same).

Benson focuses on Nehring's identification of "microcrystalline cellulose," explanation regarding "phenethylamine," and testimony that: he found "typical stuff" like a shotgun, money counter, and phones; "we usually wear" "Tyvek suits" when searching an area; he saw "TP series [pill] presses" "all the time"; pill presses were "a lot of times" imported into the United States without registration; and people do not "[n]ormally" front drugs unless they trust each other. In our view, even if the district court erred in admitting these statements, any error was not plain.

When distinguishing between lay and expert testimony by law enforcement officers, few errors are plain. Lay witnesses may offer opinions that are "not based on scientific, technical, or other specialized knowledge within the scope of" expert testimony. Fed. R. Evid. 701(c). But this court has noted that "the distinction between lay and expert testimony [when an officer testifies in a dual role] is a fine one," and it may not be plain error for a district court to fail to intervene sua sponte to demarcate such testimony. *United States v. Freeman*, 498 F.3d 893, 904 (9th

Cir. 2007). Benson does not give us reason to find otherwise here. Further, Benson does not argue that any error seriously affected the fairness, integrity, or public reputation of judicial proceedings, foreclosing his claim.

4. The cumulative-error doctrine does not alter our analysis. Where there are not "multiple errors," "there cannot be cumulative error." *United States v. Lindsay*, 931 F.3d 852, 869 (9th Cir. 2019).

**AFFIRMED**.

24-2932