**Tyrone ROGERS, Petitioner,**

**v.**

**G.J. GIURBINO, Respondent.**

**Case No. 06 CV 2549 H.**

United States District Court,
S.D. California.

July 11, 2007.

Tyrone Rogers, Imperial, CA, pro se.

Attorney General, Kyle Niki Shaffer, State of California, San Diego, CA, for Respondents.

## ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS

MARILYN L. HUFF, District Judge.

## PROCEDURAL HISTORY

Tyrone Rogers filed a Petition for Writ of Habeas Corpus on November 14, 2006 challenging his prison sentence.[1] (Petition, at 11.) On January 13, 2004, a San Diego County Superior Court judge found Petitioner guilty on one count of rape by foreign object of an unconscious victim under California Penal Code § 289(d) and one count of attempted rape of an unconscious person under Penal Code §§ 261(a)(4), 664. (Lodgment 1, at 40; Lodgment 2, vol. 2, at 156.) Petitioner appealed his conviction, which the California Court of Appeal denied in part on September 12, 2005. (Lodgment 6.) Rogers argued the trial court erroneously denied his *Faretta* motion, the admission of evidence as to his prior convictions under California Evidence Code § 1108 violated his due process and equal protection rights, the proof of prior convictions by the preponderance of evidence violated his due process right to proof of guilt beyond reasonable doubt, the evidence in support of his prior convictions was insufficient, and his sentence of 25 years to life under the three strikes law was cruel and unusual. (Lodgment 6, at 2.) The Court of Appeal upheld the conviction and sentence except the imposition of one of two five-year enhancements under Penal Code § 667(a).

The court remanded with directions to amend. (Lodgment 6, at 36.) The California Supreme Court denied review on November 16, 2005. (Lodgment 7, Lodgment 8.)

Petitioner argues on habeas corpus that the trial court erroneously denied his *Faretta* motion, the admission of evidence as to his prior convictions under California Evidence Code § 1108 violated his due process and equal protection rights, and the proof of prior offenses by the preponderance of evidence violated his due process right to proof of guilt beyond reasonable doubt. (Petition, at 6–8.) Respondent filed an answer to the Petition on February 6, 2007. (Document 5–2.) Petitioner filed a traverse on February 28, 2007. (Document 7.) The Magistrate Judge filed a Report and Recommendation to deny the Petition on April 19, 2007. (Document 1, at 15.) This Court adopts the Report and Recommendation and denies the Petition.

## FACTS

### The 2003 Offenses [2]

Rogers temporarily shared a townhouse in July 2003 with his former girlfriend, LouAnne Stewart. LouAnne slept in the master bedroom downstairs and Petitioner slept in a spare bedroom downstairs. Tom Nichols also lived in the townhouse and slept in the living room upstairs. Petitioner agreed to move out of the house by the end of July.

On July 14, LouAnne watched movies with Nichols. She consumed alcohol and at 11:30 P.M. she went downstairs to her bedroom to do paperwork. Around 11:45 P.M. Rogers entered LouAnne's bedroom and asked whether she wanted to watch a

---

**1.** The date filed is the date on which Petitioner signed the Petition, and delivered it to prison officers, under *Lott v. Mueller*, 304 F.3d 918, 921 (9th Cir.2002).

**2.** Facts summarized from California Court of Appeal opinion, Lodgment 6, at 2–4.

movie with him. She declined and he went to his bedroom.

At 1:30 A.M. LouAnne put on her nightgown and took clonazepam, a prescription anti-anxiety pill. She fell asleep. At about 3:00 A.M., LouAnne awoke and found Petitioner lying on top of her. Her legs were spread apart, her nightgown was pushed up, and Petitioner was raping her. She shouted: "You're raping me. Ty, you're raping me." Rogers replied, "Shhh ... Don't say anything." She tried to push him off her. When she threatened to call the police, Rogers got up and was naked. LouAnne tried to call 911 from her bedroom telephone but it did not work because Rogers had unplugged it. She tried to use her cellular phone but its battery was missing. As she left her bedroom to use the upstairs telephone, Rogers walked ahead of her. Nichols, who woke up to the sound of unusual noises, saw Rogers walk out of LouAnne's bedroom, naked. Nichols heard her scream that Rogers had raped her.

The police arrested Petitioner. He admitted he had digitally penetrated LouAnne and had unplugged her bedroom telephone to prevent her from calling the police. An information charged Rogers with one count of rape by a foreign object of an unconscious victim and one count of attempted rape of an unconscious person. It further alleged Petitioner had two prior serious felony convictions within the meaning of California Penal Code § 667(a)(1) and the three strikes law, § 667(b)-(i), 1170.2.

Rogers testified in his defense that his sexual activity with LouAnne was consensual. He admitted he digitally penetrated her. He also admitted his prior serious felony convictions. In rebuttal, LouAnne denied she consented to any sexual activity with Petitioner.

**The 1994 Offenses** [3]

A jury convicted Petitioner in 1994 on two counts of first degree burglary of a residence for sexual purposes under California Penal Code § 459. (Lodgment 1, at 2–3; Lodgment 2, vol. 1, at 3; Lodgment 2, vol. 3, at 15; Lodgment 2, vol. 2, at 157.) At trial in 2004, Ruth S. testified that at 5 A.M. on August 6, 1994 she saw Petitioner kneeling beside her bed, touching her leg. She screamed and her boyfriend chased Rogers out of their apartment. Ruth later found a condom in her bedroom that did not belong to her or her boyfriend.

Donna K. testified at Petitioner's trial in 2004 that at 3:20 A.M. on August 13, 1994 she awoke to find Petitioner kneeling beside her bed. She asked Rogers what he was doing. He replied that he had been drinking and had accepted a dare. She told him to leave and led him to the front door. On leaving, Rogers told her: "Well, it's too bad that you weren't up for it." Donna replied: "Excuse me?" Rogers clarified: "For a little lovin'."

**Trial Motions**

At an *In Limine* hearing on January 9, 2004, counsel for Petitioner objected to the court receiving evidence of Petitioner's prior sex offenses that occurred in 1994. (Lodgment 2, vol. 1, at 2–3.) Counsel objected on grounds the evidence was "highly prejudicial under Evidence Code 352" and would be "terribly inflammatory against [his] client." (*Id.*) He argued the two prior offenses were remote and dissimilar to the current allegation. (*Id.*) The judge accepted the evidence because he found it to be relevant under California Evidence Code § 1108 and because the pattern of behavior in the prior offenses was similar to the conduct in question.

**3.** Facts summarized from California Court of Appeal opinion, Lodgment 6, at 2–4.

(*Id.*, at 3, 4–5.) Therefore, he found the evidence was not overly prejudicial. (*Id.*, at 4.)

At a *Marsden* Hearing on January 12, 2004, Petitioner asked the trial judge to relieve counsel. *People v. Marsden*, 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 (1970). (Lodgment 2, vol. 3, at 8–20.) The court asked: "Why do you want [counsel] relieved?" (*Id.*, at 11.) Petitioner responded: "I don't really want him—your honor, I actually wanted to, ah,—a continuance." (*Id.*) After further discussion on the admissibility of evidence that Petitioner wanted to introduce (*Id.*, at 13), and before the judge had made any ruling or suggestion as to the status of counsel, Petitioner admitted: "... maybe I should talk to my counsel about it. I know you haven't dismissed him or anything. I—it's still—I still feel if I had a month, I would be comfortable. Or two weeks." (*Id.*, at 14.)

When the court informed Petitioner that trial was to commence that day, Petitioner asked: "So you're not dismissing my counsel." (*Id.*, at 17.) The court responded that there was no basis to do so. (*Id.*) Petitioner then asked: "What if I decide to go pro per? You have to grant that." (*Id.*) The court agreed, and Petitioner then stated that he wanted "to go pro per." (*Id.*) The judge responded that "[t]his is not a stall contest, sir. You have given me no reason to relieve [counsel] ... And if you say you want to go pro per, you have the right to do that ... But not—not to delay the trial for that purpose." (*Id.*) Petitioner asked: "I mean, how do I go pro per if I don't have ... preliminaries in front of me?" (*Id.*, 17–18.) The court declined to postpone trial and determined Petitioner's *Faretta* motion was a stall tactic. (*Id.*, at 20.) After a recess, the court resolved Petitioner's request by inquiring, in light of the court's decision to deny a continuance, whether Petitioner wanted to proceed pro per. "There was a possible request by Mr. Rogers to represent himself. Anything else you want to say in that regard, Mr. Rogers?" (*Id.*, at 21.) Petitioner responded: "No, your Honor. I decline on that." (*Id.*) The court found "there was no unequivocal intent to relieve counsel, just a frustration over not being able to continue the matter ..." (*Id.*)

Petitioner knowingly and voluntarily waived his right to a jury trial. (Lodgment 2, vol. 2, at 27.) The judge found Petitioner guilty of rape by a foreign object of an unconscious victim and attempted rape of an unconscious person. (*Id.*, at 156.) The judge sentenced Petitioner to an aggregate term of 35 years to life in state prison. (Lodgment 2, vol. 4, at 9.)

## LEGAL STANDARD

### Standard of Review on Habeas Corpus

Congress enacted a statute in 1867 providing that federal courts "shall have power to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States...." Act of February 5, 1867, ch. 28, § 1, 14 Stat. 385; *Williams v. Taylor*, 529 U.S. 362, 374–375, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Congress modified the federal habeas statute in 1996 through passage of the Antiterrorism and Effective Death Penalty Act (AEDPA). The Act placed new restrictions on the power of federal courts to grant writs of habeas corpus to state prisoners.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim 1) resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established United States Supreme Court precedent if the state court arrives at a conclusion opposite to the Supreme Court's on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at an opposite result. *Williams*, 529 U.S. at 405, 120 S.Ct. 1495. To make this finding, a habeas court must determine the state court's action to be "diametrically different," "opposite in character or nature," or "mutually opposed" to controlling precedent. *Id.*

A state court decision unreasonably applies Supreme Court precedent if the state court identifies the correct authority but unreasonably applies it to the facts of a habeas petitioner's case, or if a state court extends precedent to an inappropriate context or fails to extend it to a context where it should apply. *Id.*, 407, 120 S.Ct. 1495. The state court decision must be more than incorrect or erroneous. Rather, its application of clearly established law must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 65, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *Williams*, 529 U.S. at 409, 410, 412, 120 S.Ct. 1495.

On questions of fact, a habeas court's standard of review is even more deferential. Indeed, a state court's finding of fact is presumptively correct. 28 U.S.C. § 2254(e)(1); *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). Petitioner has the burden of rebutting this presumption by clear and convincing evidence. *Id.* Nonetheless, the presumption of correctness applies only to pure questions of historical fact. *Id.*, 976. On the other hand, state decisions applying law to fact are mixed questions falling under § 2254(d)(1).

**Standard of Review of a Magistrate Judge's Report and Recommendation**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo the Magistrate Judge's conclusions of law. *Britt v. Simi Valley Unified School District*, 708 F.2d 452, 454 (9th Cir.1983), overruled on other grounds by *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121–1122 (9th Cir.2003).

**Exhaustion**

Habeas petitioners must exhaust remedies available in state courts for individual claims before petitioners seek a writ in federal court on those claims. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 518–519, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

**Look Through Doctrine**

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). "[A] presumption which gives [unexplained orders] *no* effect-which simply 'looks through' them to the last reasoned decision-most nearly reflects the role they are ordinarily intended to play." *Id.*, 804, 111 S.Ct. 2590.

**ARGUMENTS**

**Right to Self–Representation**

■ Petitioner's first claim is that the trial court improperly denied his request to represent himself, in violation of his

Sixth Amendment right to self-representation recognized in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). (Petition, at 6.) However, the trial judge found "there was no unequivocal intent to relieve counsel." (Lodgment 2, vol. 2, at 21.) Indeed, Petitioner withdrew his *Faretta* motion after the court determined that it was sought for purposes of delay at the start of trial and declined to grant a continuance. (Lodgment 2, vol. 3, at 17–18; Lodgment 2, vol. 2, at 21.) In *People v. Morgan*, 101 Cal.App.3d 523, 527–528, 161 Cal.Rptr. 664 (1980), the California Court of Appeal found that, where denial of a continuance amounts to a de facto denial of a *Faretta* motion, the reviewing court must reverse if the defendant can show that he was entitled to have the motion granted. The question on habeas review is whether the trial court had discretion to deny the motion because Petitioner offered it at the beginning of trial.

In *Marshall v. Taylor*, 395 F.3d 1058, 1060 (9th Cir.2005) the Ninth Circuit determined the United States Supreme Court's ruling in *Faretta* incorporates a timing element. The Supreme Court mentioned that Faretta's request was "[w]ell before the date of trial" (*Faretta*, 422 U.S. at 807, 95 S.Ct. 2525) and "weeks before trial" (*Id.*, at 835, 95 S.Ct. 2525). It held that "[i]n forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." *Id.*, at 836, 95 S.Ct. 2525. The Supreme Court thus incorporated the facts of *Faretta* into its holding, which may require a trial court to grant a *Faretta* request when made "weeks before trial." *Marshall*, 395 F.3d at 1061.

■ In the Ninth Circuit, a *Faretta* motion is untimely if made for the purpose of delaying the trial. *U.S. v. Arlt*, 41 F.3d 516 (9th Cir.1994); *United States v. Flewitt*, 874 F.2d 669, 679 (9th Cir.1989). The record supports the trial judge's conclusion that Petitioner offered his motion as a delay tactic. Indeed, Petitioner admitted so. When the court asked why Petitioner wanted counsel relieved, Petitioner responded: "I don't really want him—your honor, I actually wanted to, ah,—a continuance." (Lodgment 2, vol. 3, at 11.)

■ State courts are free to determine when *Faretta* motions become untimely as long as their standards comport with the United States Supreme Court's holding that a request made "weeks before trial" is timely. *Marshall*, 395 F.3d at 1061; *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525. The California Supreme Court did so in *People v. Windham*, 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187 (1977), which held that when a defendant motions to represent himself at trial but does so after the trial has commenced, the court has discretion to grant or deny the request. Defendants must offer the motion within a "reasonable time prior to the commencement of trial." *Id.*, at 127–128, 137 Cal.Rptr. 8, 560 P.2d 1187. The California Court of Appeal upheld the denial of Petitioner's *Faretta* motion on that basis. (Lodgment 6, at 12.) "... Rogers' motion for self-representation was untimely because it was not made 'within a reasonable time prior to the commencement of trial.' (*People v. Windham, supra*, 19 Cal.3d at p. 128 [137 Cal.Rptr. 8, 560 P.2d 1187], fn. omitted.) Because his Faretta motion was made on the first (or possibly second) day of trial, it was untimely and the trial court then had discretion whether to grant or deny it." (*Id.*) In Petitioner's case, the California Court of Appeal did not misapply United States Supreme Court precedent in upholding the denial of his untimely *Faretta* motion.

**Due Process Challenge of Admission of Prior Offenses**

 Petitioner argues the trial court improperly admitted unduly unfair evidence of his prior sex offenses in violation of due process. (Petition, at 7.) For this argument to prevail on habeas corpus, Petitioner must show the trial court strayed from clearly established federal law as defined in United States Supreme Court decisions. 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 405, 407, 409, 120 S.Ct. 1495. A state evidentiary rule "is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Patterson v. New York*, 432 U.S. 197, 201–202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The primary guide to establish fundamentality is historical practice. *Montana v. Egelhoff*, 518 U.S. 37, 44, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996). Nonetheless, a long-standing principle does not necessarily reflect a fundamental constitutional principle. *United States v. Enjady*, 134 F.3d 1427, 1432 (10th Cir. 1998), cert. den. (1998).

Courts recognize a historical rule against the prosecution's introduction of propensity evidence because "its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson v. United States*, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948). California Evidence Code § 1101[4] applies this rule. Evidence Code § 1108[5] provides an exception to it for sex offenses. However, § 1108 incorporates Evidence Code § 352[6], which gives trial courts discretion to bar unduly unfair evidence of prior sex offenses. The California Supreme Court upheld § 1108 because of this discretion. *People v. Falsetta*, 21 Cal.4th 903, 89 Cal.Rptr.2d 847, 986 P.2d 182 (1999). In *Estelle v. McGuire*, 502 U.S. 62, 75, fn. 5, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) the United States Supreme Court expressly left unanswered whether the admission of propensity evidence necessarily violates due process. Therefore, the question on habeas review is whether the California Supreme Court, in upholding § 1108, followed clearly established federal law barring admission of propensity evidence that is unduly unfair. *Michelson*, 335 U.S. at 476, 69 S.Ct. 213. Petitioner must show that the rule against admitting propensity evidence in § 1101 is a fundamental principle of justice that ensures a fair trial, and that the exception to that rule in § 1108 violates due process.

The California Supreme Court properly applied United States Supreme Court precedent to uphold § 1108 on the basis of protections afforded in § 352. *Falsetta*, 21 Cal.4th at 903, 89 Cal.Rptr.2d 847, 986 P.2d 182. Therefore, the trial court's reli-

**4.** Section 1101(a) provides: "a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

**5.** Section 1108(a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."

**6.** Section 352 prescribes a balancing test to determine, on a case by case basis, whether evidence of prior bad acts is unduly prejudicial given its probative value. "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

ance on these statutes to admit evidence of Petitioner's prior sex offenses was proper. In *Falsetta*, 21 Cal.4th 903, 89 Cal.Rptr.2d 847, 986 P.2d 182 the California Supreme Court rejected a due process challenge to § 1108, holding that the admission of a defendant's prior sex crimes for the purpose of showing a propensity to commit such crimes was constitutional. The *Falsetta* court found unclear whether "the rule against 'propensity' evidence *in sex offense cases* should be deemed a fundamental historical principle of justice." *Id.*, 914, 89 Cal.Rptr.2d 847, 986 P.2d 182, emphasis included. In any case, the court determined "even if [the rule against introduction of propensity evidence in sex offense cases] were deemed fundamental from a historical perspective, we would nonetheless uphold section 1108 if it did not unduly 'offend' those fundamental due process principles." *Id.*, 915, 89 Cal. Rptr.2d 847, 986 P.2d 182; *Medina v. California*, 505 U.S. 437, 444–446, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). The court concluded: "[I]n light of the substantial protections afforded to defendants in all cases to which section 1108 applies, we see no undue unfairness in its limited exception [in sex offense cases] to the historical rule against propensity evidence." *Falsetta*, 21 Cal.4th at 915, 89 Cal.Rptr.2d 847, 986 P.2d 182. The cornerstone of this protection was the balancing test prescribed in § 352, which gives trial courts power to exclude remote, misleading, or otherwise unfair evidence of prior criminal conduct. *Id.*, 917, 89 Cal.Rptr.2d 847, 986 P.2d 182. The court determined § 352

protects against undue unfairness, which is what United States Supreme Court precedent requires. *Michelson*, 335 U.S. at 476, 69 S.Ct. 213.

In addition, the *Falsetta* court pointed out that § 1108 mirrors Rule 413 of the Federal Rules of Evidence (28 U.S.C.) adopted in 1994, which federal courts have upheld against due process and equal protection challenges.[7] *Falsetta*, 21 Cal.4th at 920, 89 Cal.Rptr.2d 847, 986 P.2d 182. While the rule does not expressly incorporate Rule 403[8], which is the equivalent of California's § 352, federal circuit courts have upheld Rule 413 against constitutional attack because of the protections afforded defendants in Rule 403. *United States v. Mound*, 149 F.3d 799, 800–801 (8th Cir. 1998); *Enjady*, 134 F.3d at 1432; *United States v. Guardia*, 135 F.3d 1326, 1330–1331 (10th Cir.1998).

The San Diego County Superior Court judge's admission of Petitioner's prior bad acts under § 1108 and § 352 was consistent with clearly established United States Supreme Court precedent. Therefore, Petitioner's due process challenge fails. The judge balanced the probative value of the evidence against its prejudicial effect and concluded that evidence of Petitioner's prior criminal acts was not unduly prejudicial. (Lodgment 2, vol. 1, at 3–5.) As a result, the California Court of Appeal properly upheld its admission. (Lodgment 6, at 19.)

**Equal Protection Challenge of Admission of Prior Offenses**

 The California Court of Appeal ruled in *People v. Fitch*, 55 Cal.App.4th

---

7. Subsection (a) of Rule 413 provides: "In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant."

8. Rule 403 of the Federal Rules of Evidence provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

172, 184, 63 Cal.Rptr.2d 753 (1997) that § 1108 does not violate equal protection because the statute has a rational basis. Nonetheless, Petitioner contends the admission of his prior sex offenses deprived him of equal protection of law. His argument is that California Evidence Code § 1108 is unconstitutional because it treats sex offenders differently from other offenders in allowing prior bad acts into evidence. (Petition, at 7.)

 The Fourteenth Amendment's promise of equal protection of law must "coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 271–272, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). If a law neither burdens a fundamental right nor targets a suspect class, a legislative classification withstands constitutional challenge so long as it bears a rational relation to a legitimate end. *Romer,* 517 U.S. at 631, 116 S.Ct. 1620. An equal protection challenge to a statute that creates two categories of defendants, without implicating a constitutional right, is subject to a rational basis inquiry that asks whether the classification has any rational relation to its purposes. *Estelle v. Dorrough,* 420 U.S. 534, 537–538, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975).

 Sex offenders are not a suspect class. *United States v. LeMay,* 260 F.3d 1018, 1030–1031 (9th Cir.2001). In addition, there is no United States Supreme Court precedent recognizing a fundamental right to have a trial free from relevant propensity evidence that is not unduly unfair. *Id.* California Evidence Code § 352 provides safeguards to the admission of unduly unfair evidence. Therefore, § 1108 does not burden a fundamental right. The

California Court of Appeal properly applied a rational basis standard of review in *Fitch,* 55 Cal.App.4th at 184, 63 Cal. Rptr.2d 753, to uphold § 1108. The court found that "the nature of sex offenses, both their seriousness and their secretive commission which results in trials that are primarily credibility contests, justified the admission of relevant evidence of a defendant's commission of other sex offenses. This reasoning provides a rational basis for [§ 1108]." *Id.* Consequently, the Superior Court's admission of Petitioner's prior bad acts into evidence under § 1108 did not violate his equal protection rights. The California Court of Appeal properly upheld the admission of this evidence. (Lodgment 6, at 19–20.)

**Improper Standard of Proof to Admit Prior Offenses**

 Petitioner erroneously argues the trial court improperly used the preponderance of evidence standard of proof to establish his prior sex offenses. (Petition, at 8.)

 Due process requires proof beyond a reasonable doubt of all elements of an offense. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The admission of propensity evidence for a trier of fact to evaluate requires sufficient evidence to support a finding by the trier of fact that the defendant committed the similar act. *Enjady,* 134 F.3d at 1433; *Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). That is, a trial court must make a preliminary finding that a jury could reasonably find by a preponderance of evidence that the "other act" occurred. *Enjady,* 134 F.3d at 1433. The trier of fact must then find true, beyond reasonable doubt, all facts necessary to render a guilty verdict. *Winship,* 397 U.S. at 364, 90 S.Ct. 1068.

The trial judge admitted Petitioner's 1994 offenses for presentation to the jury. (Lodgment 2, vol. 1, at 4–5.) Indeed, Petitioner admitted both were true. (Lodgment 2, vol. 2, at 147.) He waived his right to a jury trial. (*Id.,* at 27.) The judge properly explained his reasoning on the record to justify the conviction. (Lodgment 2, vol. 2, 155–156.)

In sum, the record shows Petitioner's trial was constitutional and fair. The Court of Appeal found the judge applied the correct burden of proof and determined there was sufficient evidence to convict Petitioner beyond a reasonable doubt. Clearly, the record supports this finding. The judge did not rely on propensity evidence of prior sex offenses to the exclusion of other evidence.[9] (*Id.,* at 155.) For example, the judge considered the victim's credibility and determined she was truthful. (*Id.*) There is no indication the judge found Petitioner guilty by the preponderance of evidence. As the Court of Appeal rightly concluded, "the trial court, even more than a jury, would be cognizant of the requirement that a defendant's guilt of a charged offense be proved beyond a reasonable doubt despite proof of prior sexual acts by only a preponderance of the evidence. Therefore, we conclude the burden of proof of Rogers's guilt of the charged offenses in this case was not lowered below the requisite standard of proof

beyond a reasonable doubt." (Lodgment 6, at 22–23.)

**CONCLUSION**

For the above stated reasons, this Court ADOPTS the Magistrate Judge's Report and Recommendation and DENIES the Petition for Writ of Habeas Corpus.

IT IS SO ORDERED.

**REPORT AND RECOMMENDATION REGARDING DENIAL OF PETITIONER'S WRIT FOR HABEAS CORPUS**

NITA L. STORMES, United States Magistrate Judge.

**I.**

**INTRODUCTION**

Tyrone Rogers ("Petitioner" or "Rogers"), a California prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2254. Petitioner contests his confinement on the bases that the trial court (1) violated his sixth amendment right to self-representation; (2) improperly admitted evidence of prior convictions in violation of his due process and equal protection rights; and (3) violated his rights to due process and a fair trial by establishing the truthfulness of the prior convictions using an improper standard of proof. [Doc. No. 1.] Respondent filed an Answer, arguing

---

**9.** The Court of Appeal noted the trial judge in Petitioner's case used California Jury Instruction Code Number 2.50.01 (Lodgment 6, at 21–22), which says: "if you find by a preponderance of the evidence that the defendant committed a prior sexual offense . . ., that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime." (CALJIC No. 2.50.01 (Jan. 2005 ed.).) Rather, the trier of fact must prove all elements of an offense beyond a reasonable doubt. To the extent Petitioner challenges CALJIC No. 2.50.01, the California Supreme

Court held in *People v. Reliford,* 29 Cal.4th 1007, 1012, 130 Cal.Rptr.2d 254, 62 P.3d 601 (2003) that CALJIC No. 2.50.01 did not lower the burden of proof because the instruction explicitly states that evidence of prior bad acts is insufficient to render a guilty verdict. *Id.,* 1013, 130 Cal.Rptr.2d 254, 62 P.3d 601. Jurors would reasonably understand this instruction. *Id.,* 1014, 130 Cal.Rptr.2d 254, 62 P.3d 601. Judges would, too. Adherence to CALJIC No. 2.50.01 in Petitioner's case did not lower the burden of proof to convict and was therefore constitutional.

that the Court should deny the Petition because the state court's determinations do not contradict clearly established federal law nor unreasonably apply the facts to the governing laws. [Doc. No. 5.] Petitioner filed a Traverse. [Doc. No. 7.]

This Court has reviewed the Petition, Answer, Traverse and all supporting documents. After a thorough review, the Court **RECOMMENDS** that the Petition be **DENIED.**

## II.

## FACTUAL BACKGROUND

*The Incident.*[1]

In July 2003, Rogers was temporarily sharing a townhouse with his former girlfriend, LouAnne S. ("LouAnne") and another roommate, Tom Nichols ("Nichols"). LouAnne had the master bedroom and Rogers had the second bedroom, both downstairs. Nichols occupied the upstairs living room.

LouAnne and Nichols had dinner and watched movies together on the evening of July 14, 2003. LouAnne drank some beer and wine. At around 11:30 p.m., she went to her bedroom to do some paperwork. About fifteen minutes later Rogers came home, went into LouAnne's bedroom and asked if she would watch a movie with him. LouAnne said no. They had a short conversation, and then Rogers went to his bedroom.

At around 1:30 a.m. LouAnne put on a long, sleeveless T-shirt that she used as a nightgown. She drank some beer and

took a prescription anti-anxiety pill to help her relax and sleep. She then fell asleep.

At around 3:00 a.m. LouAnne woke up. Rogers was lying on top of her. LouAnne found her legs were spread apart and that her nightgown was pushed up. She felt penetration. LouAnne shouted at Rogers, but he told her to be quiet. When LouAnne said she was going to call the police, Rogers got up. LouAnne saw that he was naked. She then tried to call the police from the house phone, but the phone had been unplugged. Next she tried her cellular phone, but the battery had been removed. As LouAnne left to use the upstairs phone, Rogers walked ahead of her.

Meanwhile, the noise had woken up Nichols. He got up and saw Rogers, naked, walking out of LouAnne's bedroom. He heard LouAnne scream that Rogers had raped her.

The police came and arrested Rogers. He admitted that he penetrated LouAnne with his finger and that he unplugged her bedroom phone to prevent her from calling the police.

Rogers was charged with one count of rape by a foreign object of an unconscious victim[2] and one count of attempted rape of an unconscious victim[3]. [Lodgment 1 at 2.] The charges also alleged that Rogers had two prior serious felony convictions within the meaning of the three strikes law. [Lodgment 1 at 2–3.]

*The In Limine Hearing.*[4]

The trial court held a pre-trial *in limine* motion hearing on January 9, 2004, where

1. Unless otherwise noted, these facts are summarized from the San Diego Police Department's Investigators Report of July 16, 2003 [Lodgment 1 at 32] and Court of Appeal, Fourth Appellate District Opinion No. D044637 [Lodgment 6 at 2–4]. *See Garvin v. Farmon,* 258 F.3d 951, 952 (9th Cir.2001)

(paraphrasing facts from the state appellate court opinion).

2. Cal. Pen.Code § 289(d).

3. Cal. Pen.Code § 261(a)(4).

4. These facts are summarized from the Reporter's Transcript of the January 9, 2004 *in*

it considered admitting the evidence of Rogers' prior convictions. Rogers had previously been convicted of two counts of burglary, where the underlying felonies were intent to commit sexual assault. The trial court found that the evidence of the convictions was not more prejudicial than its overall probative value. It admitted the evidence.

### The Marsden Hearing.[5]

Trial started on January 12, 2004. Rogers objected to his defense counsel. The trial court, without the prosecution present, conducted a *Marsden*[6] hearing. During the hearing, Rogers admitted that his purpose in bringing the *Marsden* motion was to continue the trial date rather than move to discharge his court-appointed counsel:

> THE COURT: Well, let me ask you this: Why do you want Mr. Crabtree relieved?
>
> [PETITIONER]: I don't really want him—your Honor, I actually wanted to, ah,—a continuance.
>
> Why? There's still some things I haven't told my counsel, Mr. Crabtree, because I wanted information first to be able—because I don't really want to bring in different people that has nothing to do with this case.
>
> * * *
>
> I—it's still—I still feel if I had a month, I would be comfortable. Or two weeks.

[Lodgment 2, Vol. 3 at 11:23–12:2; 14:7–8.] The judge refused to relieve Rogers' counsel and delay the trial. [Lodgment 2, Vol. 3 at 17:13–15.]

*limine* motion hearing. [Lodgment 2, Vol. 1 at 1–4].

**5.** These facts are summarized from the Sealed Transcript of the *Marsden* hearing. [Lodgment 2, Vol. 3].

**6.** *People v. Marsden,* 2 Cal.3d 118, 84 Cal. Rptr. 156, 465 P.2d 44 (1970).

During the *Marsden* hearing to relieve counsel, Rogers made a *Faretta*[7] motion to represent himself. [Lodgment 2, Vol. 3 at 17:16–17.] The trial judge, however, re-emphasized that he would not delay the trial and warned Rogers that if he wanted to represent himself, he would have to immediately select a jury. [Lodgment 2, Vol. 3 at 17:16–27.] The trial judge denied the *Marsden* motion because he lacked good cause to grant it and found that Rogers simply intended to delay the trial. [Lodgment 2, Vol. 3 at 20:12–25.]

### The Faretta Motion.

When the trial court reconvened after the *Marsden* motion, the judge again asked Rogers if he wanted to represent himself. Rogers declined:

> THE COURT: There was a possible request by Mr. Rogers to represent himself.
>
> Anything else you want to say in that regard, Mr. Rogers?
>
> [PETITIONER]: No your Honor. I decline on that.
>
> THE COURT: All right. I'll show that you've declined.
>
> It's also clear to me that there was no unequivocal intent to relieve counsel, just a frustration over not being able to continue the matter in connection with, ah, his *Marsden* hearing.

[Lodgment 2, Vol. 2 at 21:14–23.]

### The Bench Trial.[8]

Rogers waived his right to a jury trial and the judge started a bench trial. [Lodgment 2, Vol. 2 at 27:6–28:5.]

**7.** *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

**8.** Unless otherwise noted, these facts are summarized from the Court of Appeal Opinion. [Lodgment 6 at 2–4].

At trial LouAnne testified about the facts of the incident.

As determined at the *in limine* hearing, the trial judge admitted evidence of Rogers' prior burglary conviction and the underlying felonies. Specifically, Ruth S. ("Ruth") testified that on August 6, 1994, Rogers entered her apartment bedroom around 5:00 a.m. while she was sleeping. Rogers knelt next to her bed and touched her leg. Ruth screamed. She woke up her boyfriend, who was in bed with her at the time. Her boyfriend chased Rogers out of the apartment. Ruth later found a condom in her bedroom that did not belong to her or her boyfriend.

Another witness, Donna K. ("Donna"), testified. She said she woke up around 3:20 a.m. to see Rogers kneeling beside her bed. Remaining calm, Donna, questioned Rogers as to why he was in her apartment. He said he had been drinking and was acting on a dare. She told him to leave and walked Rogers out of her apartment. While leaving, Rogers commented, "Well, it's too bad that you weren't up for it." Donna said, "Excuse me?" Rogers replied, "for a little lovin.' "

The trial court convicted Rogers of rape by a foreign object of an unconscious victim and attempted rape of an unconscious victim. Rogers was sentenced to serve an aggregate term of 35 years to life in state prison. [Lodgment 1 at 59.]

### The Appeal.

Rogers timely appealed. The California Court of Appeal, Fourth District, Division One, fully reviewed the judgment. On September 12, 2005 it affirmed the judgment, but reversed the imposition of one of the two 5–year enhancements under Penal Code § 667(a). [Lodgment 6 at 36]. On September 20, 2005, Rogers filed a petition to review the appellate court's unpublished decision. [Lodgement 7]. The California Supreme Court silently denied the petition on November 21, 2005. [Lodgement 8].

Rogers filed this Petition on November 17, 2006.

### III.

### LEGAL STANDARD

### *AEDPA Governs this Petition.*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Petition. *See Lindh v. Murphy,* 521 U.S. 320, 336–337, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under AEDPA, a federal court will not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the decision was (1) contrary to or involved an unreasonable application of clearly established federal law;[9] or (2) based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); *Early v. Packer,* 537 U.S. 3, 7–8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

A federal habeas petition must allege a deprivation of one or more federal rights; the federal court will not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

### *Decisions that Contradict or Unreasonably Apply Federal Law.*

A federal habeas court may grant relief where the state court (1) decides a case "contrary to" federal law by applying a

---

**9.** "Clearly established federal law," for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

rule different from the governing law set forth in Supreme Court cases; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). A federal court may also grant habeas relief where a state court decision is an "unreasonable application" of federal law, such as where the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies those decisions to the facts at issue. *Id.*

The state court decision must be more than incorrect or erroneous; to warrant habeas relief the state court's application of "clearly established federal law" must be "objectively unreasonable." *Andrade,* 538 U.S. at 75, 123 S.Ct. 1166. "Objectively unreasonable" differs from "clear error" in that a federal court cannot grant habeas relief only because it believes that the state court erroneously or incorrectly applied "clearly established federal law;" the application must be **objectively** unreasonable. *Id.* at 75–76, 123 S.Ct. 1166 (internal citation omitted).

### Decisions Based on an Unreasonable Determination of the Facts.

Section 2254(e)(1) provides that: "[a] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

### Review of the State Court Decision.

 If the State Supreme Court silently denies a Petitioner's appeal with a summary dismissal, the reviewing federal habeas court must look through to the last reasoned state court opinion in making a decision. *See Medina v. Hornung,* 386 F.3d 872, 877 (9th Cir.2004).

Here, the decision from the California Court of Appeal is the last-reasoned state court decision addressing Petitioner's claims.

## IV.

## DISCUSSION OF PETITIONER'S CLAIMS

### A. Claim 1: The Trial Court's Denial of Petitioner's Request to Represent Himself Did Not Violate His Sixth Amendment Right to Self–Representation.

### 1. Self–Representation Motions Are Not Granted Where their Purpose is to Delay the Trial.

 In *Faretta,*[10] the Supreme Court held that a criminal defendant has the sixth amendment right to represent himself if he voluntarily and intelligently elects to do so. A defendant's legal knowledge and capability is irrelevant to determining a *Faretta* motion; the central inquiry focuses on whether the defendant was aware of the rights and benefits he was waiving. *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. In the Ninth Circuit a *Faretta* motion is deemed timely until the jury is impaneled, unless the defendant makes the motion for the purpose of delaying trial. *Armant v. Marquez,* 772 F.2d 552, 555 (9th Cir.1985).

 In *Windham,*[11] the California Supreme Court discussed timeliness and factors to consider when ruling on a *Faretta* motion. Under California law, a motion for self-representation is timely if brought within a "reasonable time prior to the com-

**10.** *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

**11.** *People v. Windham,* 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187 (1977).

mencement of trial." *Windham*, 19 Cal.3d at 128, 137 Cal.Rptr. 8, 560 P.2d 1187. To determine a "reasonable time," a court must examine:

> ... the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.

*Windham*, 19 Cal.3d at 128–129, 137 Cal. Rptr. 8, 560 P.2d 1187. The "reasonable time" requirement prevents a defendant from improperly masking his or her intent to unjustifiably delay the trial: " '[A] defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request.' " *People v. Burton*, 48 Cal.3d 843, 852–853, 258 Cal.Rptr. 184, 771 P.2d 1270 (1989) (citing *Windham*, 19 Cal.3d at 128, n. 5, 137 Cal. Rptr. 8, 560 P.2d 1187).

While the Ninth Circuit and California rules may appear to employ different rules regarding the timeliness of the motion, they differ very little in practice. *Burton*, 48 Cal.3d at 854, 258 Cal.Rptr. 184, 771 P.2d 1270. Both forums permit denial of the motion—even if timely—where the purpose is to delay trial. *Compare id.* (denying motion three days before the jury was to be impaneled because there was strong evidence defendant sought to delay the trial) *with Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir.1982) (denying motion on the ground that it was a "tactic to delay [defendant's] scheduled trial and obstruct the orderly course of the administration of

justice" even though defendant was competent to defend himself).

### 2. Petitioner Brought the *Faretta* Motion to Delay the Trial.

Here, Petitioner brought his *Faretta* motion on the first day of trial, after the trial court had denied his *Marsden* motion to appoint new counsel.[12] In denying the *Marsden* motion, the trial court concluded that Petitioner was not dissatisfied with the performance of his counsel, but rather was trying to delay the trial. *See* Factual Background Section, 3:13–4:4; Lodgment 2, Vol. 3 at 11:23–12:2, 14:7–8, 17:13–15, 20:12–25. The Court implicitly, if not explicitly, considered the *Windham* factors when denying the motion. *See* Lodgment 6 at 13–15.

Petitioner then moved to represent himself. His motion appeared conditioned on continuing the trial. The trial judge told Petitioner that he could represent himself but that he could not delay the trial:

> [PETITIONER]: What if I decide to go pro per? You have to grant that.
>
> THE COURT: I have to grant that, that is true.
>
> [PETITIONER]: I want to go pro per.
>
> THE COURT: Are you ready to pick a jury?
>
> This is not a stall contest, sir. You have given me no reason to relieve Mr. Crabtree. I have heard no basis for that he hasn't done his job on your behalf. He certainly is an experienced, competent counsel. And if you say you want to go pro per, you have the right to do that. You're absolutely right. But not—not to delay the trial for that purpose.

\* \* \*

---

12. For purposes of this Order, the Court assumes that Rogers unequivocally made the *Faretta* motion.

It's clear to me that you are simply saying "I want to represent myself because you won't put it off." I may not let you represent yourself if it means we have to continue the matter. Because that's what you're saying, "I want to represent myself and I want to continue the matter."

If you want to represent yourself and go to trial—because it's already here for trial. We've started trial—then you have the right to do that. I don't think it's a wise choice, by the way. Wouldn't be very smart at all.

Lodgment 2, Vol. 3 17:16–27, 20:14–25. In sum, the trial court determined that by trying to represent himself, Petitioner was seeking to delay the trial rather than knowingly and intelligently waiving his right to counsel.

Petitioner argues that his motion was timely and that the record does not support the trial court's finding of delay. Traverse at 10. While under Ninth Circuit law Petitioner's *Faretta* motion initially appeared timely, the record reveals that Petitioner actually sought to delay the trial. In fact, Petitioner admitted he sought to delay it. Under both federal and state standards, use of a *Faretta* motion to delay trial is inappropriate and grounds for denial.

Because the state court's ruling was not contrary to or an unreasonable application of clearly established federal law permitting denial of a self-representation motion where the purpose of the motion is to delay trial, the Court **RECOMMENDS** that Petitioner's Claim that the trial court violated his sixth amendment right to self-representation be **DENIED.**

## B. *Claim 2: The Trial Court Did Not Improperly Admit Evidence of Petitioner's Prior Convictions in Violation of His Due Process and Equal Protection Rights.*

### 1. The *In Limine* Ruling.

At an *in limine* hearing, the trial court decided to admit evidence of Petitioner's prior sexual assaults (the underlying felonies in Petitioner's burglary conviction) under California Evidence Code section 1108. The trial judge ruled that evidence of the prior assaults was relevant and not overly prejudicial:

They're relevant under 1108 in that they are sexual assaults for which he was convicted.

\* \* \*

I will state, under any prejudicial effect, of course it's prejudicial ... But prejudicial does not—is not the only test. It's very relevant. It shows clearly that [Petitioner] has a method of operating in this regard. And the prejudicial effect is only prejudicial in that it may cause the jury to feel he's more likely to be guilty in terms of his method of operation and the way he conducts himself. That is not overly prejudicial. Especially in light of the fact that each of the incidents are so similar in terms of their scope, in terms of their activity. Neither overwhelms the other, creates special prejudice, as sometimes the cases call for.

Lodgment 2, Vol. 1 at 3:17–4:26.

### 2. Petitioner's Due Process Rights.[13]

 The improper admission of evidence does not usually violate the Consti-

---

**13.** In the Petition, Petitioner argues that admission of the evidence of the sexual acts violated his due process rights. But in the Traverse, he argued that at his trial in 1994 the judge allowed in tainted evidence—that his court-appointed attorneys failed to correct—which then constituted the prejudicial "propensity" evidence in the 2004 trial. This

tution and is not normally cognizable in federal habeas corpus. *See Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Habeas relief may be available, however, **if** the admission of the evidence was fundamentally unfair **and** resulted in a denial of due process. *See Windham v. Merkle,* 163 F.3d 1092, 1103 (9th Cir.1998). The admission of evidence can only amount to a due process violation where a jury may not draw any permissible inferences from its admission. *Id.* at 920, 89 Cal.Rptr.2d 847, 986 P.2d 182.

The interplay between California Evidence Code section 352 [14] and section 1108 [15] gives a court discretion to admit evidence of prior acts as propensity evidence: "[t]rial courts may no longer deem 'propensity' evidence unduly prejudicial per se, but must engage in a careful weighing process under § 352." *People v. Falsetta,* 21 Cal.4th 903, 916–917, 89 Cal. Rptr.2d 847, 986 P.2d 182 (1999). In deciding whether to admit prior sexual offense evidence, the trial court should consider such factors as its nature, relevance, remoteness, likelihood of confusing the issues, prejudicial impact, and burden on defendant in defending against the uncharged offense. *Id.* The trial court has broad discretion to assess whether concerns of undue prejudice outweigh the evidence's probative value. *People v. Rodrigues,* 8 Cal.4th 1060, 1124, 36 Cal.Rptr.2d 235, 885 P.2d 1 (1994).

In *Falsetta,* the defendant argued that the admission of evidence of prior rape charges violated his due process rights. The California Supreme Court rejected his challenge, finding that "the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge." *Id.* at 917, 89 Cal.Rptr.2d 847, 986 P.2d 182. The court noted:

"[S]ection 1108 has a safeguard against the use of uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial ... By subjecting evidence of uncharged sexual misconduct to the weighing process of § 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice ... *With this check upon the admission of evidence of uncharged sex offenses in prosecutions for sex crimes, we find that ... section 1108 does not violate the due process clause.*"

*Falsetta,* 21 Cal.4th at 917–918, 89 Cal. Rptr.2d 847, 986 P.2d 182 (quoting *People v. Fitch,* 55 Cal.App.4th 172, 183, 63 Cal. Rptr.2d 753 (1997)) (emphasis in original).

Neither the Supreme Court nor the Ninth Circuit has ruled on whether admission of propensity evidence under section 1108 violates due process. The Ninth Cir-

Court will not determine the propriety of the evidence admitted in the 1994 proceedings.

**14.** California Evidence Code § 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

**15.** California Evidence Code § 1108(a) states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by § 1101, if the evidence is not inadmissible pursuant to § 352."

cuit has, however, specifically rejected a due process challenge to Federal Rule of Evidence 414 [16]. *See U.S. v. LeMay*, 260 F.3d 1018, 1024, 1027 (9th Cir.2001). It concluded that Federal Rule of Evidence 403—which is equivalent to California Evidence Code section 352—serves to filter out prior conduct evidence that is so prejudicial as to deprive the defendant of his due process rights. *Id.* at 1026. The Court explained: "With the protections of the Rule 403 balancing test still in place, LeMay's due-process challenge to Rule 414 loses much of its force." *Id.*

This analysis of Rules 403 and 414 is analogous to the California Supreme Court's analysis of sections 352 and 1108. Therefore, just as Federal Rule 403 eliminates the due process concern in Rule 414, California Evidence Code section 352 should eliminate the same due process concern in section 1108. Accordingly, the Court **RECOMMENDS** that Petitioner's claim that the admission of evidence of his prior convictions violates his due process should be **DENIED**.

### 3. Petitioner's Equal Protection Claim.

Petitioner argues that the admitted propensity evidence violated his equal protection rights. Neither the Supreme Court nor the Ninth Circuit has ruled on whether admission of propensity evidence under California Evidence Code section 1108 violates due process.

A California court rejected an equal protection claim that evidence admitted under section 1108 violated a defendant's equal protection rights "because it treated those accused of sex offenses differently from those accused of other crimes." *People v.*

*Fitch*, 55 Cal.App.4th 172, 184, 63 Cal. Rptr.2d 753 (1997). That court found no separate classification by section 1108. *Id.* at 184–185, 63 Cal.Rptr.2d 753.

The Ninth Circuit has also rejected a similar equal protection challenge to Federal Rule of Evidence 414. In *LeMay*, it found that sex offenders are not a suspect class. *LeMay*, 260 F.3d at 1030. It explained that accused child molesters did not have a "fundamental right" to bar from trial relevant propensity evidence that was not unduly prejudicial. *Id.* The court held that Rule 414 passed the rational basis test because it furthered a legitimate government interest to prosecute crime effectively. *Id.*

Other federal courts have rejected similar equal protection challenges to Federal Rule of Evidence 413, which is akin to section 1108 and allows admission of propensity evidence of other incidents of sexual assault. *See U.S. v. Mound*, 149 F.3d 799, 801 (8th Cir.1998) (rejecting equal protection challenge to Federal Rule 413); *U.S. v. Enjady*, 134 F.3d 1427, 1433–34 (10th Cir.1998) (rejecting equal protection challenge to Federal Rule 413).

Based on the reasoning in *LeMay* and relevant decisions from other circuits, federal law does not appear to support Petitioner's equal protection claim with regard to evidence admitted under section 1108. Therefore, Petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of clearly established federal law. Accordingly, the Court **RECOMMENDS** that Petitioner's claim that the trial court violated his equal protection rights by admitting evidence of his prior convictions be **DENIED**.

---

**16.** California Evidence Code § 1108 is similar to Federal Rule of Evidence 414, which permits the introduction of prior conduct evidence in federal child molestation cases.

**C. Claim 3: The Trial Court Did Not Violate Petitioner's Rights to Due Process and a Fair Trial by Establishing the Truthfulness of the Prior Convictions Using an Improper Standard of Proof.**

Due process protects an accused "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Petitioner contends that use of his prior sexual assaults, established through the preponderance of the evidence, violates his due process right to be convicted of the crime charged by proof beyond a reasonable doubt.[17] In essence, Petitioner challenges California Jury Instruction ("CALJIC") No. 2.50.01 because it permits evaluating evidence of prior offenses by such a standard. The instruction states:

Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense [on one or more occasions] other than that charged in the case.

If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that [he][she] was likely to commit and did commit the crime [or crimes] of which [he][she] is accused.

However, if you find by a preponderance of the evidence that the defendant committed [a] prior sexual offense[s], **that is not sufficient by itself to prove beyond a reasonable doubt that [he] [she] committed the charged crime[s].** If you determine an inference properly can be drawn from this evidence, **this inference is simply one item for you to consider,** along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.

CALJIC No. 2.50.01 (7th ed. 1999) (emphasis added).

In 1999, the third paragraph was added to the instruction and clarified how jurors were required to evaluate the defendant's guilt relating to the charged offense. *See Gibson v. Ortiz*, 387 F.3d 812, 818 (9th Cir.2004).

The Supreme Court has not addressed the constitutionality of CALJIC No. 2.50.01. The California Supreme Court has held that it is constitutional because, it found, no reasonable juror would solely use proof of other offenses by a preponderance of the evidence to convict using the "beyond a reasonable doubt" standard. *People v. Reliford*, 29 Cal.4th 1007, 1013–16, 130 Cal.Rptr.2d 254, 62 P.3d 601 (2003).

The Ninth Circuit has held that the earlier version of the instruction—the one omitting the third paragraph—violated due process rights because it contradicted the constitutional mandate that an accused cannot be convicted except upon proof beyond a reasonable doubt. *Gibson*, 387 F.3d at 822 (granting habeas relief under section 2254). The *Gibson* court also explained that in *Falsetta*,[18] the California Supreme Court found that the revised in-

---

**17.** Petitioner does not specifically allege that he raised this issue at trial and Respondent never argues that Petitioner is procedurally barred from asserting this claim. While the record remains unclear as to whether Petitioner raised this issue at the trial level, because the Court of Appeal addressed this argument on the merits and Respondent never objected to it, this Court assumes that there is no reason to procedurally bar this claim.

**18.** *People v. Falsetta*, 21 Cal.4th 903, 89 Cal. Rptr.2d 847, 986 P.2d 182 (1999).

struction comported with due process requirements. *Id.* at 819. The court distinguished its reasoning from that in *Falsetta* because *Falsetta* based its due process determination on the new part of the instruction that was not in use at the time of defendant's trial in *Gibson*.[19] *Id.*

While the Ninth Circuit has yet to address the constitutionality of the new version of CALJIC 2.50.01 in a published decision, other district courts have found that it comports with due process. *See, e.g., Wyrick v. Newland,* 2007 WL 760529, *8, 2007 U.S. Dist. LEXIS 21950, *22–*23 (N.D.Cal.2007); *Benson v. Pliler,* 2006 WL 2521976, *7–8, 2006 U.S. Dist. LEXIS 65042, *22 (E.D.Cal.2006).

The explicit admonition in the instruction's third paragraph that evidence of the prior sexual offense "is not sufficient by itself to prove beyond a reasonable doubt that [he] committed the charged crime[s]" makes the instruction constitutionally sufficient because it requires proof beyond a reasonable doubt. Further, even if the instruction was unclear, no evidence shows that the trier applied it in an unconstitutional manner because (1) these priors were actual convictions, unlike the prior offenses in *Gibson*; and (2) this was a bench, not a jury trial, and Petitioner raises no facts to show that the judge convicted him using an improper standard of proof.

Given the analysis in *Gibson* and holdings in other district courts, Petitioner fails to show that the state court's decision contradicted or unreasonably applied clearly established federal law. Therefore, this Court **RECOMMENDS** that Petitioner's claim that his rights to due process and a fair trial were violated due to use of an improper standard of proof be **DENIED.**

### V.

### CONCLUSION

Petitioner has failed to show that the state court's determinations were contrary to or an unreasonable application of clearly established federal law. He also fails to raise any clear and convincing evidence to rebut the correctness of the trial court's factual findings. Therefore this Court **RECOMMENDS** that the Petition be **DENIED** in its entirety. This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than *May 18, 2007,* any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *May 30, 2007.* The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

**IT IS SO ORDERED.**

DATED: April 17, 2007

---

**19.** The court also noted that some California appellate decisions had found that the earlier version of the instruction did not comport with due process. *Gibson,* 387 F.3d at 820 n.

5 *referring to People v. Vichroy,* 76 Cal.App.4th 92, 90 Cal.Rptr.2d 105 (1999) and *People v. Orellano,* 79 Cal.App.4th 179, 93 Cal.Rptr.2d 866 (2000).